**Harvey Frank ROBBINS, Plaintiff,**

v.

**BUREAU OF LAND MANAGEMENT ("BLM"), Department of the Interior, the United States of America; Charles Wilkie, individually and as an employee of the BLM; Darrell Barnes, individually and as an employee of the BLM; Teryl Shryack, individually and as an employee of the BLM; Patrick Merrill, individually and as an employee of the BLM; David Stimson, individually and as an employee of the BLM; Michael Miller, individually and as an employee of the BLM; Gene Leone, individually and as an employee of the BLM; and John Does 1 Through 20, Defendants.**

No. 98–CV–201–B.

United States District Court,
D. Wyoming.

March 21, 2003.

Karen J. Budd–Falen, Richard Michael AuBuchon, Marc Ryan Stimpert, Budd–Falen Law offices, Cheyenne, for Plaintiffs.

Thomas D. Roberts, U.S. Attorney's Office, Cheyenne, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

BRIMMER, District Judge.

This case arises out of a dispute between a Wyoming rancher and the federal government over a property interest in a small strip of land known locally as Rock Creek Road. The matter is currently before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. Upon reading the briefs, hearing oral argument, and being fully advised of the premises, the Court **FINDS** and **ORDERS** as follows:

### *Statement of the Parties and Jurisdiction*

Plaintiff, Harvey Frank Williams, is a resident of Wyoming. Plaintiff is the owner of the High Island Ranch in Hamilton Dome, Wyoming, which is located in Hot Springs County.

Defendant Department of the Interior is an agency of the United States headed by the Secretary of the Interior. Defendant Bureau of Land Management ("BLM") is a subordinate agency of the Department of Interior. Among other things, the BLM is charged with the administration of public lands in the United States. Defendant Joe Vessels is a BLM assistant manager and line officer. Defendant Charles Wilkie is a BLM area manager and line officer. Defendant Darrell Barnes is a BLM district manager. Defendants Michael Miller and David Stimson are BLM investigative and law enforcement officers whose duties include investigating criminal offenses and making recommendations regarding prosecution. Defendants Gene Leone, Patrick Merrill, and Teryl Shryack are employees of the BLM. Defendants John Does 1 through 20 are unknown federal officers

who participated in the wrongful conduct alleged in Plaintiff's Complaint.

The Court has exclusive jurisdiction over this matter. 28 U.S.C. § 1346(b)(1). Venue is proper in the District of Wyoming. 28 U.S.C. § 1391(e)(1), (2).

### *Background*

In 1994, George Nelson owned the High Island Ranch in Hamilton Dome, Wyoming. (Second Am. Compl., at ¶ 16). On April 5, 1994, Mr. Nelson granted a non-exclusive access easement to the BLM across his ranch. (*Id.* at ¶ 21). The easement ran along a private ranch road known as the Rock Creek Road. (*Id.*). The BLM, however, failed to record this easement as required by Wyoming's recording statute. (*Id.* at ¶ 21; *See also* Wyo. Stat. Ann. § 34–1–120 (providing that an unrecorded conveyance is void against a subsequent purchaser for value who, without notice, first records)).

On May 31, 1994, Plaintiff purchased the High Island Ranch from Mr. Nelson. (*Id.* at ¶ 16). Plaintiff took the High Island Ranch without notice of the BLM's easement and recorded his interest in Hot Springs County. (*Id.* at ¶ 23). Under Wyoming law, when Plaintiff recorded his deed, the BLM's easement across Rock Creek Road was extinguished. Wyo. Stat. Ann. § 34–1–120.

At the High Island Ranch, Plaintiff runs a commercial guest ranch and engages in cattle ranching. (*Id.* at ¶ 17). Plaintiff's ranch includes a number of BLM livestock grazing permits and preference rights. (*Id.* at ¶ 18). Pursuant to the grazing permits, livestock from Plaintiff's ranch may graze on federal land. (*Id.*). Additionally, Plaintiff had a Special Recreational Use Permit, which allowed him to operate his commercial guest ranch activities on federal land. (*Id.* at ¶ 19).

Defendant Vessels contacted Plaintiff to discuss the possibility of obtaining a new easement after he learned that the BLM's easement was extinguished. (*Id.* at ¶ 26). Defendant Vessels made a non-negotiable demand that Plaintiff grant the BLM an easement across Rock Creek Road. (*Id.*). Plaintiff refused to grant the BLM an easement. (*Id.* at ¶ 30).

Thereafter, Defendants engaged in a pattern of behavior and conduct in an attempt to persuade Plaintiff to re-grant the BLM an easement across Rock Creek Road. (*Id.* at ¶ 31). In June 1994, Defendant Vessels wrote to Plaintiff requesting permission to enter his land to perform a survey for the proposed easement. (*Id.* at ¶ 32). Plaintiff denied the BLM access to his property to conduct the survey. (*Id.* at ¶ 33). Nevertheless, the BLM entered Plaintiff's property without his permission and conducted the survey. (*Id.* at ¶ 34).

On February 23, 1995, Defendant Vessels informed Plaintiff that his right-of-way across federal lands to reach some of his landlocked property would be terminated if he did not grant the BLM an easement across Rock Creek Road. (*Id.* at ¶ 39). Again, Plaintiff declined the BLM's request to grant it an easement. (*Id.* at ¶¶ 30, 36). After this last denial, the BLM allegedly developed an internal policy aimed at coercing Plaintiff into granting the BLM an easement. (*Id.* at ¶ 39). Pursuant to this policy, Defendant Vessels and his subordinate employees began harassing Plaintiff. (*Id.*).

Specifically, Plaintiff alleges that pursuant to this internal policy: (1) the BLM refused to follow the terms and conditions of the High Island Ranch Allotment Management Plan in good faith, which resulted in Plaintiff not being able to obtain any flexibility in grazing operations, (*id.* at ¶ 39); (2) Defendant Vessels cancelled Plaintiff's right-of-way across federal land, (*id.* at ¶ 40); (3) BLM officers urged Plaintiff's neighbors to file a criminal complaint against him and provoked disputes

between Plaintiff and his neighbors, (*id.* at ¶¶ 41, 43); (4) the BLM frivolously prosecuted Plaintiff for livestock trespass, (*id.* at ¶ 45); (5) BLM employee Ed Parodi informed Plaintiff that if he kept butting heads with the BLM, the dispute would "get ugly," "come to war," and that the BLM would give Plaintiff a "hardball education," (*id.* at ¶ 46); (6) the BLM trespassed on Plaintiff's property by representing that a fence easement was a general right of way easement, (*id.*, at ¶¶ 48–56);[1] (7) Defendants Barnes and Vessels enticed Plaintiff to come to the BLM office by telling him they wanted to discuss his grazing allotment and instead subjected him to a surprise interrogation by BLM law enforcement officers David Stimson and Michael Miller, (*id.* at ¶¶ 70–73); and (8) after the interrogation, the BLM convinced the United States Attorney's Office to prosecute Plaintiff for interfering with federal employees engaged in the performance of their official duties, (*id.* at ¶¶ 90(s)-(t)).

On August 12, 1998, Plaintiff filed suit in federal district court. Plaintiff's Second Amended Complaint: (1) alleges that Defendants, in their individual capacities, violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968; and (2) asserts a *Bivens* claim based on allegations that Defendants violated Plaintiff's federal constitutional rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (holding that an individual has a cause of action against a federal official in his individual capacity for damages arising out of the official's violation of the Constitution under the color of federal authority).

### *Legal Standards*

#### A. Fed.R.Civ.P. 12(b)(1).

 A motion to dismiss based on qualified immunity is treated as a motion to dismiss for lack of subject matter jurisdiction. *Meyers v. Colo. Dep't of Human Services*, No. 02–1054, 2003 WL 1826166, 2003 U.S.App. LEXIS 199, *2–3 (10th Cir. Jan. 6, 2003). The party invoking federal jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists. *United States ex. rel. Holmes v. Consumer Ins. Group*, 279 F.3d 1245, 1249 (10th Cir.2002). A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) may take two forms. When a defendant makes a facial attack on the complaint's allegations, which challenges the sufficiency of the complaint, the district court will accept the plaintiff's allegations as true. *Cal. Cas. & Fire Ins. Co. v. Brinkman*, 50 F.Supp.2d 1157, 1161 (D.Wyo.1999). If, however, the defendant goes beyond the allegations contained in the complaint and challenges the facts upon which subject matter jurisdiction depends, the district court will not presume the truthfulness of the plaintiff's allegations and has wide discretion to consider other documents to resolve the jurisdictional question. *Id.*

#### B. Fed.R.Civ.P. 12(b)(6).

A federal district court may dismiss a cause of action for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) only

---

1. In July 1997, Plaintiff encountered Defendants Teryl Shryack and Patrick Merrill traveling in a pickup truck along Rock Creek Road. Plaintiff informed these BLM employees that they did not have permission to trespass across his property. In response, Defendants Shryack and Merrill provided Plaintiff a copy of the fence easement. Plaintiff tore up the easement and told the BLM employees to leave, which they did. As a result of this incident, Plaintiff was charged with forcibly impeding or interfering with a BLM officer in violation 18 U.S.C. § 111. Plaintiff was acquitted of that charge after a three-day jury trial. (*See* Pl.'s Second Am. Compl. at ¶¶ 60–69, 160–169).

when it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Yousef v. Reno,* 254 F.3d 1214, 1219 (10th Cir.2001). The district court must assume the plaintiff's allegations are true and construe them liberally in the light most favorable to him. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99; *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1118 (10th Cir.1997). However, the district need only accept the well-pleaded allegations in the complaint as true and is not required to accept "conclusory allegations, unwarranted inferences, or legal conclusions in a complaint." *Dry v. United States,* 235 F.3d 1249, 1255 (10th Cir. 2000) (internal quotation marks omitted).

 Qualified immunity is an affirmative defense that must be pleaded by governmental officials. *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). The qualified immunity defense may be asserted in a Rule 12(b)(6) motion. *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 645 (10th Cir.1988). The district court must accept as true all well-pleaded factual allegations in the complaint when reviewing a Rule 12(b)(6) motion in which qualified immunity is asserted as a defense. *Neiberger v. Hawkins,* 70 F.Supp.2d 1177, 1181 (D.Colo.1999). However, the determination of whether a federal law "was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law, not one of 'legal facts.'" *Elder v. Holloway,* 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994); *Medina v. Cram,* 252 F.3d 1124, 1127–28 (10th Cir.2001).

### Analysis

Defendants argue the doctrine of qualified immunity protects them from any liability under Plaintiff's Second Amended Complaint. (Br. in Supp. of Defs.' Mot. to Dismiss Second Am. Compl. of Pl. ("Defs.' Br."), at p. 13). Plaintiff responds that qualified immunity does not shield Defendants from suit because the allegations in the Second Amended Complaint establish violations of clearly established federal law. (Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n Br."), at p. 20).

#### A. Qualified Immunity.

 Qualified immunity protects federal officials from individual liability unless the officials violated a clearly established constitutional or statutory right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Mick v. Brewer,* 76 F.3d 1127, 1134 (10th Cir.1996). The purpose of qualified immunity is to encourage "public officials to act independently and without fear of consequences if there is no violation of a clearly established right." *Garrett v. Stratman,* 254 F.3d 946, 950–51 (10th Cir.2001) (internal quotations and citations omitted).

The Tenth Circuit has explained the framework a district court should follow when considering an assertion of qualified immunity:

> The plaintiff initially bears a heavy two-part burden when defendant pleads the defense of qualified immunity.... The plaintiff must show: (1) that the defendant's actions violated a constitutional or statutory right, and (2) that the right allegedly violated was clearly established at the time of the conduct at issue. Unless the plaintiff carries its two-fold burden, the defendant prevails.

*Brewer,* 76 F.3d at 1134 (internal quotation marks, citations, and brackets omitted). In the context of a Rule 12(b)(6) motion, if the plaintiff carries this burden then the motion to dismiss must be denied. *See Hawkins,* 70 F.Supp.2d at 1191.[2]

---

**2.** In the context of a motion for summary judgment, the burden would shift back to the

A constitutional or statutory right is "clearly established" when the contours of the right are sufficiently evident that a reasonable official would understand that what he was doing violated that right. *Cram,* 252 F.3d at 1128. The Tenth Circuit has explained:

> Although the very action in question does not have to have previously been held unlawful, in light of the pre-existing law the unlawfulness must be apparent.... Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains.

*Brewer,* 76 F.3d at 1134 (internal quotation marks and citations omitted); *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

■ The Supreme Court has held that an opinion on point from a particular court is not required for the law to be clearly established. *United States v. Lanier,* 520 U.S. 259, 271–72, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). Rather, the dispositive issue is whether the state of the law at the time of the lawsuit gave the federal officials "fair warning" that their alleged treatment of the plaintiff was in violation of his constitutional or statutory rights. *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666 (2002). A general statement of the law, such as in a criminal statute, is capable giving federal officials "fair warning." *Id.; Lanier,* 520 U.S. at 271, 117 S.Ct. 1219. Additionally, "[i]f the law is clearly established, the [qualified] immunity defense will ordinarily fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ In sum, the "general rule is that a qualified immunity defense fails once a plaintiff has alleged that defendants have violated the plaintiff's clearly established rights." *Roska v. Peterson,* 304 F.3d 982, 1000 (10th Cir.2002). In practice, this means that whether a governmental official performing discretionary functions is entitled to qualified immunity turns on the "objective legal reasonableness" of the official's actions in light of the clearly established law at the time the actions were taken. *Wilson v. Layne,* 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

## B. Plaintiff's RICO Claim.

Plaintiff argues he has a statutory right to be free from extortion. (Pl.'s Br. in Opp'n, at p. 28). Therefore, Plaintiff contends that Defendants are not shielded by qualified immunity because they knowingly violated the clearly established Hobbs Act, 18 U.S.C. § 1951, and the Wyoming Blackmail (extortion) statute, Wyo. Stat. Ann. § 6–2–402(a). (*Id.* at pp. 20–21). At the hearing, Defendants responded that generally applicable criminal laws cannot provide the basis for a general assertion of "statutory right" under the Supreme Court's qualified immunity analysis.

### 1. The Statutory Rights at Issue.

■ RICO "creates a civil cause of action for 'any person injured in his business or property by reason of a violation of section 1962.'" *Beck v. Prupis,* 529 U.S. 494, 495, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000) (quoting 18 U.S.C. § 1964(c)).[3] In

---

defendant to prove there were no material issues of fact that would defeat the claim of qualified immunity. *Brewer,* 76 F.3d at 1134.

**3.** Any person found liable for a civil RICO violation is liable for treble damages, costs, and attorneys' fees. 18 U.S.C. § 1964(c); *Bacchus Indus. Inc. v. Arvin Indus. Inc.,*

turn, section 1962 makes it unlawful for any person to engage in "a pattern of racketeering activity" that affects interstate commerce. 18 U.S.C. §§ 1962(c), 1961(4).[4] Racketeering activity includes, among other predicate acts, activity that is indictable under the Hobbs Act and any act involving extortion chargeable under state law. 18 U.S.C. § 1961(1)(A)-(B). A "pattern of racketeering activity" consists of two or more acts of racketeering activity. *Id.* § 1961(5).

The Hobbs Act provides that whoever affects commerce in any way by extortion, or attempts or conspires to do so, may be fined or imprisoned, or both. 18 U.S.C. 1951(a). Extortion is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Id.* § 1951(b)(2).

The Supreme Court has held that the Hobbs Act adopted the common law definition of extortion under color of official right. *Evans v. United States*, 504 U.S. 255, 263–64, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992). At common law, a public official who obtained the property of another, to which neither the official nor the government office was entitled, was guilty of extortion. *Scheidler v. Nat'l Org. for Women, Inc.*, ── U.S. ──, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003); *United States v. Nardello*, 393 U.S. 286, 289, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969). Further, Congress has explicitly recognized that agents of the United States can be liable for the crime of extortion under the color of official right. 18 U.S.C. § 872; *United States v. Culbert*, 435 U.S. 371, 373, 98 S.Ct. 1112, 55 L.Ed.2d 349 (1978).

Under Wyoming law, blackmail constitutes a single offense embracing the separate crimes formerly known as blackmail and extortion. Wyo. Stat. Ann. § 6–2–402(e). A person commits "blackmail if, with the intent to obtain the property of another or to compel action or inaction of any person against his will, the person ... accuses or threatens to accuse a person of a crime or immoral conduct which would tend to degrade or disgrace the person or subject him to the ridicule or contempt of society." Wyo. Stat. Ann. § 6–2–402(a).

2. The Hobbs Act and the Wyoming Blackmail Statute as Clearly Established Law.

Although it has been unlawful for a person to commit extortion for centuries, Congress first provided individual persons with the right to be free from extortion when it enacted RICO in 1970.[5] RICO

───────

4. To establish a civil RICO claim under 18 U.S.C. § 1962(c), the plaintiff must show that the defendants: (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *BancOklahoma Mortgage Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1100 (10th Cir.1999). Defendants' Motion to Dismiss does not address whether these elements have been satisfied; therefore, the Court will assume, without deciding, that these elements have been satisfied for purposes of this motion.

5. The first English statute prohibiting extortion, the "First Statute of Westminster," was enacted in 1275. *See* James Lindgren, *The Elusive Distinction Between Bribery and Extortion: From the Common Law to the Hobbs Act*, 35 U.C.L.A. L.Rev. 845, 841 (1988). The Hobbs Act, which was enacted in 1946, prohibited extortion under the color of official right. *Id.* at 889. When Congress enacted RICO as Title IX to the Organized Crime

939 F.2d 887, 891 (10th Cir.1991). Plaintiff's Second Amended Complaint also seeks injunctive relief for the alleged civil RICO violations. (Second Am. Compl., at p. 36). Recently, the Supreme Court granted certiorari to resolve the Circuit split on whether private litigants can obtain injunctive relief pursuant to 18 U.S.C. § 1964(c). *Scheidler v. Nat'l Org. for Women, Inc.*, ── U.S. ──, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003). However, because of the Supreme Court's disposition of another issue in the case, it did not reach the merits of this issue.

defines extortion as a predicate act for which a person engaged in a pattern of racketeering activity may be held liable. 18 U.S.C. §§ 1861, 1862. The Hobbs Act, in turn, defines extortion and makes it unlawful. 18 U.S.C. § 1951. The Supreme Court has, on numerous occasions, set forth the common law definition of extortion. *See e.g. Nardello*, 393 U.S. at 289, 89 S.Ct. 534. Similarly, the Wyoming Blackmail statute sets forth what constitutes extortion/blackmail and makes it unlawful. Wyo. Stat. Ann. § 6–2–402.

■ These general statements of law are capable of giving federal officials fair warning that extortion is unlawful. Therefore, the Court finds that a person's right to be free from extortion is clearly established because the contours of that right are sufficiently evident that a reasonable official would understand that extorting property from a person under the color of official authority would violate that person's rights.

3. Application.

■ A federal employee is entitled to qualified immunity if his conduct was objectively reasonable in light of the clearly established rights at issue. Taking Plaintiff's well-pleaded allegations as true, Defendants Vessels, Barnes, Wilkie, Leone, Shryack, Merrill, Stimson, and Miller engaged in a pattern of racketeering activity, i.e., extortion, under the color of official right in an attempt to force Plaintiff to grant the BLM an easement. (*See* Second Am. Compl., at ¶¶ 26, 32–34, 37, 43, 63–66, 69, 90). An objectively reasonable BLM employee performing his discretionary functions, in light of the clearly established laws prohibiting extortion, would not have engaged in the activity alleged in Plaintiff's Second Amended Complaint. In oth-

er words, assuming Plaintiff's allegations are true, Defendants' actions violated the objective legal reasonableness standard because the unlawfulness of these actions would have been apparent in light of pre-existing law.

4. Conclusion.

For the aforementioned reasons, Defendants' Motion to Dismiss Plaintiff's First Claim for Relief, violation of RICO, on the basis of qualified immunity is **DENIED**.

C. Plaintiff's Fourth Amendment *Bivens* Claim.

Plaintiff argues he has a constitutional right to be free from malicious prosecution and abuse of process, which is grounded in the Fourth Amendment right to be free from unreasonable seizures. (Pl.'s Br. in Opp'n, at pp. 39, 43). Therefore, Plaintiff contends that Defendants are not shielded by qualified immunity because they knowingly violated these clearly established constitutional rights. (*Id.* at pp. 39–49). Defendants respond that Plaintiff is attempting to improperly constitutionalize common law torts and that even if these common law torts could be artfully pled as constitutional claims in a *Bivens* action, such constitutional rights are not clearly established. (Defs.' Br., at pp. 28–37).

1. The Constitutional Rights at Issue.

Plaintiff argues that he was seized in violation of the Fourth Amendment and therefore may assert a claim for malicious prosecution and abuse of process to redress this constitutional deprivation. (Pl.'s Opp'n Br., at pp. 39–40, 48). Plaintiff, relying primarily on Justice Ginsburg's concurrence in *Albright v. Oliver*, 510 U.S. 266, 276–81, 114 S.Ct. 807, 127 L.Ed.2d 114

---

Control Act of 1970, it provided, for the first time, a statutory mechanism by which a private person injured in "his business or prop-

erty" could seek redress for extortion committed under the color of official right. *See Prupis*, 529 U.S. at 496–97, 120 S.Ct. 1608.

(1994), argues that for purposes of the Fourth Amendment a person is seized from the initiation of criminal proceedings against him until those claims are fully adjudicated.[6] (Pl.'s Opp'n Br., at pp. 39–40). This Court disagrees.

In *Albright,* a plurality of the Supreme Court expressed no view on whether the Constitution permits an assertion of a § 1983 claim for malicious prosecution on the basis of an alleged illegal seizure. 510 U.S. at 275, 114 S.Ct. 807. The Tenth Circuit has, however, recognized the viability of a malicious prosecution claim under § 1983. *Taylor v. Meacham,* 82 F.3d 1556, 1560 (10th Cir.1996).[7] In *Meacham,* the Tenth Circuit held that in order to maintain a malicious prosecution claim pursuant to § 1983, a plaintiff must demonstrate a violation of his constitutional right to be free from unreasonable seizures. *Id.* at 1561. However, in *Meacham,* the "seizure issue" was fairly straightforward because the Plaintiff was detained for seven weeks. *Id.* at 1561 n. 5, 1560.[8]

The Tenth Circuit has not, in a published opinion, addressed the issue of whether a seizure has occurred for purposes of the Fourth Amendment when a plaintiff asserting a malicious prosecution claim has not been restrained in his liberty by deten-tion. However, in affirming a dismissal of a malicious prosecution claim, the Tenth Circuit has explained:

> [Plaintiffs] failed to set forth sufficient evidence showing they were seized for purposes of the Fourth Amendment. Specifically, the only deprivations of liberty sustained by [Plaintiff] Lewis was that he had to attend two trials; and he was fingerprinted in connection with one of the summons. Similarly, the only deprivation of liberty sustained by [Plaintiff] Woodman is that she had to make one, and possibly two, court appearances before the ... charge was dismissed. Because Lewis and Woodman have not shown they sustained any other deprivations of liberty in connection with their receipt of summonses, they have failed to show they were seized in violation of the Fourth Amendment. *See Britton v. Maloney,* 196 F.3d 24, 30 (1st Cir.1999).

*Lewis v. Rock,* 48 Fed.Appx. 291, 294 (10th Cir.2002). Hence, it appears the Tenth Circuit has rejected Justice Ginsburg's "continuing seizure" theory.

While the Tenth Circuit did not elaborate on its holding in *Lewis,* its reliance on the First Circuit's decision in *Britton* is instructive. In *Britton,* the First Circuit held that a criminal defendant's voluntary

---

**6.** The Fourth Circuit has described this as the "continuing seizure" theory. *Riley v. Dorton,* 115 F.3d 1159, 1162 (4th Cir.1997).

**7.** Although *Albright* and *Meacham* arose in the context of a § 1983 action, the reasoning in those cases are applicable to a *Bivens* claim because in both a § 1983 action against a state officer and a *Bivens* claim against a federal officer, the plaintiff must prove a violation of a underlying constitutional right. *See Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ("in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right ...."); *Robbins v. Wilkie,* 300 F.3d 1208, 1211 (10th Cir.2002) ("*Bivens* claims

allow plaintiffs to recover from individual federal agents for constitutional violations these agents commit against plaintiffs."). Additionally, immunities under § 1983 and *Bivens* claims are identical. *Harlow v. Fitzgerald,* 457 U.S. 800, 809, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

**8.** Plaintiff also relies on *Garcia v. Johnson,* No. 94–1360, 1995 WL 492879, 1995 U.S.App. LEXIS 23282 (10th Cir. Aug. 18, 1995) in support of his continuing seizure argument. However, in that case, as in *Meacham,* the "seizure issue" was relatively straightforward because the plaintiff was detained in solitary confinement for approximately nine months. *Id.* at *7.

compliance with a summons to appear in court without being arrested, detained, restricted in his travel, or otherwise subject to a deprivation liberty did not constitute a seizure under the Fourth Amendment. 196 F.3d at 30.[9] Similarly, in *Nieves v. McSweeney*, the First Circuit held that a plaintiff could not maintain a malicious prosecution action because he was not seized for purposes of the Fourth Amendment when the plaintiff was released on his own recognizance, had to appear before the court on a number of occasions, and ultimately endured a trial. 241 F.3d 46, 54–55. The First Circuit reasoned:

> The very idea of defining commonplace conditions of pretrial release as a "seizure" for Fourth Amendment purposes seems to stretch the accepted meaning of the term. After all, a seizure for Fourth Amendment purposes is generally a discrete event, quintessentially an arrest ... or at least a physical detention.... Thus, seizure jurisprudence traditionally has centered on the initial deprivation of liberty that a seizure of a person entails. Since a seizure is a single act, and not a continuous fact, run-of-the-mill conditions of pretrial release do not fit comfortably within the recognized parameters of the term.

*Id.* at 55 (internal quotation marks, citations, and brackets omitted).

Moreover, the "continuing seizure" theory constitutionalizes the tort of malicious prosecution because every criminal defendant is seized during the pendency of the criminal action against him. *See Daniels v. Williams*, 474 U.S. 327, 332–33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (warning against constitutionalizing common law torts). If acquitted, a *Bivens* claim or § 1983 action provides the vehicle for every such criminal defendant to assert a cause of action for malicious prosecution against the law enforcement officers who assisted in levying the charges against him. While the Fourth Amendment was drafted to restrict the exercise of arbitrary government action in particular circumstances, *see Albright*, 510 U.S. at 273, 114 S.Ct. 807, it would be inconceivable to assert that the Amendment's drafters contemplated that an accused free on personal recognizance and unrestrained in his liberty was "seized" by the government. *See California v. Hodari D.*, 499 U.S. 621, 624, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (stating that "[f]rom the time of founding to the present, the word 'seizure' has meant a 'taking possession.' ").

2. Application.

 Plaintiff's Second Amended Complaint alleges that the BLM, through the various individual Defendants, convinced the United States Attorney's Office to prosecute him for intentionally interfering with federal employees engaged in the performance of their official duties. (Second Am. Compl. at ¶ 90(s)-(t)). Plaintiff alleges that the he was charged without probable cause for forcibly impeding or interfering with a BLM officer in violation of 18 U.S.C. § 111. (*Id.* at ¶¶ 160–164).

On August 18, 1997, the government issued a summons for Plaintiff. Plaintiff voluntarily responded to that summons and was never placed under arrest. In

---

**9.** The First Circuit also noted "the Second, Third, and Fifth Circuits have concluded that something less than forcible detention will suffice to constitute a seizure." 196 F.3d at 29 (citing *Evans v. Ball*, 168 F.3d 856, 860–61 (5th Cir.1999); *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir.1998); *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir.1997)). However, three other Circuits, in addition to the First Circuit, have rejected Justice Ginsburg's "continuing seizure" theory. *See Riley v. Dorton*, 115 F.3d 1159, 1162 (4th Cir.1997) (en banc); *Reed v. City of Chicago*, 77 F.3d 1049, 1052 n. 3 (7th Cir.1996); *Whiting v. Traylor*, 85 F.3d 581, 584 (11th Cir.1996).

responding to the summons, Plaintiff was "fingerprinted and booked." (*Id.* at ¶ 141). On September 8, 1997, Plaintiff was released on his own recognizance. Plaintiff was not required to post bond nor were any other restrictions placed on his liberty, other than being required to appear for court. Plaintiff made several court appearances before trial. Plaintiff then had a three-day jury trial and was acquitted. (*Id.* at ¶ 167).

Importantly, Plaintiff has not alleged that he was restrained in his liberty in any manner other than being summoned, charged, fingerprinted, booked, and taken to trial. After being fingerprinted and booked, Plaintiff was released on his own recognizance without any restrictions on his liberty. The Tenth Circuit, along with other courts, has held that this is insufficient to constitute a seizure for purposes of the Fourth Amendment. *See Lewis,* 48 Fed.Appx. at 294; *McSweeney,* 241 F.3d at 54–56. Thus, because Plaintiff has not alleged any other deprivation of liberty in connection with his receipt of the summons, he has failed to allege that he was seized in violation of the Fourth Amendment. This Court, like the Supreme Court, does "not think it desirable, even as a policy matter, to stretch the Fourth Amendment beyond its words ... as [Plaintiff] urges." *Hodari D.,* 499 U.S. at 627, 111 S.Ct. 1547. Hence, Plaintiff has no basis to maintain his malicious prosecution or abuse of process claims under *Bivens* because he was not illegally seized in violation of the Fourth Amendment.

### 3. Conclusion.

Having concluded that Plaintiff's constitutional right to be free from illegal seizure was not violated, the Court need not address the qualified immunity issue. *Taylor,* 82 F.3d at 1564; *McSweeney,* 241 F.3d at 53. However, as the discussion above makes clear, even if the Court adopted Plaintiff's "continuing seizure"

theory, that theory of a constitutional seizure is not clearly established. For the aforementioned reasons, Defendants' Motion to Dismiss Plaintiff's Fourth Amendment *Bivens* claim is **GRANTED.**

### D. Plaintiff's Fifth and Fourteenth Amendment *Bivens* Claims.

Plaintiff argues he has a constitutional right to control and dispose of his property, which is guaranteed by the Due Process Clause of the Fifth Amendment. (Second Am. Compl. at 176–79). Plaintiff contends that these rights are clearly established and therefore Defendants are not entitled to qualified immunity. (Pl.'s Br. in Opp'n, at pp. 46–48). Defendants respond that Plaintiff cannot base his *Bivens* claims on conclusory, vague, and general allegations of a constitutional deprivation. (Defs.' Br., at pp. 35–36).

### 1. The Constitutional Rights at Issue.

Plaintiff argues that he has a Fifth Amendment right to the quiet use and enjoyment of his property, to control his property, and to exclude persons from his property. (Pl.'s Br. in Opp'n, at p. 43–44). Plaintiff argues that Defendants violated this right by: (1) denying him procedural due process; (2) violating his substantive due process rights; and (3) retaliating against him for exercising his right not to grant the BLM an easement. (Pl.'s Opp'n Br., at pp. 43–44).

In relevant part, the Fifth Amendment provides that no person shall be deprived of property without due process of law. U.S. Const. amend. V. The Supreme Court has held that the "right to exclude" others from private property is a "fundamental element of the property right." *Kaiser Aetna v. United States,* 444 U.S. 164, 179–80, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979). The Supreme Court has also hinted that this property right includes the

concomitant right to be free from extortion by governmental officials. *See Dolan v. Tigard,* 512 U.S. 374, 388, 114 S.Ct. 2309, 129 L.Ed.2d. 304 (1994); *Nollan v. Cal. Coastal Comm'n,* 483 U.S. 825, 837, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).

a. Plaintiff's Procedural Due Process Claim.

■ Plaintiff argues that the alleged extortion by Defendants violated his procedural due process rights under the Fifth Amendment. (Pl.'s Opp'n Br., at p. 43; Second Am. Compl., at ¶ 176). In the context of a *Bivens* claim, to state a claim for a procedural due process violation, a plaintiff must allege that the government officials: (1) intentionally or recklessly, (2) deprived plaintiff of his property, and (3) there is no adequate post-deprivation remedy. *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Burton–Bey v. United States,* 100 F.3d 967, 1996 WL 654457, (10th Cir.1996).

■ Plaintiff's procedural due process claim fails for two reasons. First, Plaintiff has not alleged that he was deprived of his property. Although the definition of deprivation under the Due Process Clause is somewhat elastic, at a minimum it connotes a loss. *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577–79, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiff is arguing that Defendants, through various extortionate tactics, attempted to deprive him of his right to exclude others (i.e., the BLM and its employees) from his property. However, as Plaintiff's Second Amended Complaint makes clear, he succeeded in excluding Defendants from his property. (*See* Second Am. Compl., at ¶ 66). At most, Plaintiff has alleged a state law trespass to land cause of action. However, trespass does not become a violation of the Fifth Amendment simply because it was committed by a federal official.

*See Daniels v. Williams,* 474 U.S. 327, 332–33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Absent a deprivation of a property interest, no procedure is required by the Due Process Clause. *Watson v. Univ. of Utah Med. Center,* 75 F.3d 569, 578 (10th Cir.1996).

■ Second, even if Plaintiff was deprived of a property interest, he has not alleged the absence of an adequate post-deprivation remedy. Plaintiff argues that the deprivation and absence of procedural due process occurred because of the alleged extortionate acts committed by Defendants. (Pl.'s Br. in Opp'n, at p. 43). However, as outlined above, RICO provides a private cause of action to remedy extortionate acts committed under the color of law. 18 U.S.C. § 1964. Alternatively, Plaintiff could have brought an action under Wyoming law for damages to his property arising out of the alleged trespasses. *See Hudson,* 468 U.S. at 535, 104 S.Ct. 3194; *Edgcomb v. Lower Valley Power and Light, Inc.,* 922 P.2d 850, 859 (2002) (outlining requirements to state a claim for trespass to land).

Plaintiff has failed to show that he was deprived of a protected property interest or that he did not have an adequate post-deprivation remedy. Thus, Plaintiff failed to carry his burden of demonstrating that Defendants violated a clearly established right for purposes of qualified immunity. *Watson,* 75 F.3d at 578.

b. Substantive Due Process Claim.

Plaintiff argues that his substantive due process rights were violated because the alleged extortion by Defendants constituted a deliberate on-going abuse of executive discretion that shocks the conscience. (Pl.'s Br. in Opp'n, at p. 44). As noted above, the Fifth Amendment prohibits deliberate decisions by governmental officials to deprive a person of property without

due process of law. U.S. Const. amend. V; *Williams,* 474 U.S. at 330, 106 S.Ct. 662.

The Supreme Court has repeatedly emphasized that the touchstone of due process is to protect against arbitrary government action. *County of Sacramento v. Lewis,* 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). The substantive due process guarantee protects against government power being used for purposes of oppression. *Williams,* 474 U.S. at 331, 106 S.Ct. 662. In a case challenging executive action on substantive due process grounds, "the threshold question is whether the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis,* 523 U.S. at 847 n. 8, 118 S.Ct. 1708. Conduct by an executive officer can be said to shock the contemporary conscience when it is deliberately inflicted for the purpose of causing injury without any justifiable governmental interest. *Id.* at 849, 118 S.Ct. 1708; *see also Rochin v. California,* 342 U.S. 165, 172–73, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (holding that the involuntary pumping of an individual's stomach to obtain evidence shocks the conscience). The Supreme Court has explained that the ultimate determination of whether executive action shocks the conscience is determined by the totality of the circumstances; however, the Court has repeatedly adhered to *Rochin*'s benchmark. *Id.* at 847, 850, 118 S.Ct. 1708.

 Turning to the circumstances of this case, and keeping in mind the Supreme Court's reluctance to expand the concept of substantive due process and desire to preserve the constitutional proportions of constitutional claims, this Court is unable to conclude that any of the alleged conduct by Defendants violated Plaintiff's substantive due process rights. *See id.* at 842, 847 n. 8, 118 S.Ct. 1708. Stripping the verbiage from Plaintiff's Sec-

ond Amended Complaint, he has alleged that Defendants: (1) failed to grant him flexibility in his grazing operations by not following the High Island Ranch Allotment Management Plan; (2) cancelled a right-of-way across federal land; (3) instigated disputes between Plaintiff and his neighbors; (4) frivolously prosecuted Plaintiff for livestock trespass; (5) threatened Plaintiff by telling him not to butt heads with the BLM or things would get ugly and come to war; (6) trespassed on his property; (7) subjected Plaintiff to a surprise interrogation; and (8) convinced the United States Attorney's Office to prosecute Plaintiff. (Second Am. Compl., at ¶¶ 39, 40, 41, 43, 45–56, 70–73, 90).

These allegations are not of conduct that is "arbitrary in the constitutional sense." *Lewis,* 523 U.S. at 846, 118 S.Ct. 1708 (quoting *Collins v. Harker Heights,* 503 U.S. 115, 129, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)) (internal quotation marks omitted). Plaintiff's allegations, viewed in the light most favorable to him, indicate that he was inconvenienced and suffered minimal harm by Defendants' conduct; however, the Supreme Court has "made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state [or federal] authority causes harm." *Id.* Rather, the alleged executive actions must violate the decencies of civilized conduct and interfere with rights implicit in the concept of ordered liberty. *Id.* at 847, 118 S.Ct. 1708. Plaintiff's allegations, while unfortunate, do not involve acts that constitute an abuse of power that can be condemned as conscience shocking. *Id.* at 850, 118 S.Ct. 1708.

Plaintiff has failed to allege facts that demonstrate he was deprived of his substantive due process guarantees. Thus, Plaintiff failed to carry his burden of demonstrating that Defendants violated a

clearly established right for purposes of qualified immunity. *Watson*, 75 F.3d at 578.

> c. Plaintiff's Unconstitutional Retaliation Claim.

Plaintiff has alleged that he was retaliated against for exercising his constitutional right to control, and exclude others from, his private property. (Second Am. Compl., at ¶¶ 171, 177). Defendants did not address this allegation.

■■■■■ The Constitution protects the right to exclude others from private property. *See Kaiser Aetna*, 444 U.S. at 179–80, 100 S.Ct. 383. The Tenth Circuit has held that an act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983, and hence in a *Bivens* action. *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir.1990). Although retaliation is not expressly referenced in the Constitution, it is nonetheless actionable because retaliatory actions may tend to chill the exercise of constitutional rights. *Poole v. County of Otero*, 271 F.3d 955, 960 (10th Cir.2001). To state a claim for unconstitutional retaliation, a plaintiff must allege: (1) exercise of a constitutionally protected right; (2) retaliatory actions by governmental officials in response to the exercise of that constitutional right; and (3) more than a "theoretical injury." *Id.* at 960–61. With respect to the third element, the plaintiff need not allege "actual injury" resulting from the retaliation; rather, it is sufficient that the plaintiff allege that the retaliatory acts would chill a person of ordinary firmness from continuing to engage in the constitutionally protected activity. *Id.*

■■■■ Plaintiff has alleged that several actions were taken against him after he refused to grant the BLM an easement and exercised his right to exclude others from his property. (*See* Second Am. Compl., at ¶¶ 39, 40, 41, 43, 45–56, 70–73,

90). For example, Plaintiff alleges that Defendant Vessels cancelled his right-of-way across federal land after he refused to grant the BLM an easement. (*Id.* at ¶ 40). If true, these allegations indicate that Defendants took action against Plaintiff in retaliation for exercising his property rights. Although it does not appear that Plaintiff suffered any actual injury from the allegations, that does not preclude Plaintiff's retaliation claim. *See Poole*, 271 F.3d at 961.

> 2. Whether the Right to Be Free From Unconstitutional Retaliation was Clearly Established.

Plaintiff argues that the right to be free from unconstitutional retaliation based upon the exercise of a fundamental property right, such as the right to exclude, is clearly established. (Pl.'s Opp'n Br., at p. 47). In *DeLoach*, the Tenth Circuit held that the unlawful intent inherent in retaliation for the exercise of a constitutional right places the retaliatory action "beyond the scope of qualified immunity if the right retaliated against was clearly established." 922 F.2d at 620.

As noted above, the Supreme Court has held that the right to exclude others from private property has universally been held to be a fundamental element of the property right. *Kaiser Aetna*, 444 U.S. at 179–180, 100 S.Ct. 383. Property interests, although drawn from state law, are protected by the Constitution. *Chavez v. City of Santa Fe Housing Auth.*, 606 F.2d 282, 284 (10th Cir.1979). These property interests are not limited to a few rigid technical forms; rather, "property denotes a broad range of interests that are secured by existing rules or understandings." *Id.* (quoting *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)) (internal quotation marks omitted). The Court concludes that the universally

accepted "right to exclude" is a clearly established right protected by the Constitution.

### 3. Application.

 Plaintiff has alleged that he attempted to exclude Defendants from his property on numerous occasions and that in response, Defendants retaliated against him for exercising that property right. (Second Am. Compl. at ¶¶ 26, 34, 37, 40, 90, 150, 171). As a result, because this Court concludes that the "right to exclude" is was clearly established, the "unlawful intent inherent in such retaliatory action places it beyond the scope of a [federal] officer's qualified immunity ...." *De-Loach,* 922 F.2d at 620.

### 4. Conclusion.

Defendants' Motion to Dismiss Plaintiff's procedural and substantive due process *Bivens* claims under the Fourteenth Amendment is **GRANTED.** Defendant's Motion to Dismiss Plaintiff's unlawful retaliation *Bivens* claim under the Fifth Amendment is **DENIED.**

### *Conclusion*

The necessity of federal officials working to protect the Nation's land and resources is self-evident. In performing those functions, federal officials must be given substantial latitude and discretion to protect the government's interests. *See Lewis,* 523 U.S. at 857–58, 118 S.Ct. 1708. These discretionary functions are, however, subject to the primacy of interest in property which the Constitution and Acts of Congress seek to protect. *Id.* And therein lies the perennial tension that arises under our Constitution in a suit such as this between the governed and the governors. *See Williams,* 474 U.S. at 332, 106 S.Ct. 662.

This Rule 12(b)(1) and 12(b)(6) Motion has tested the formal sufficiency of Plaintiff's claim for relief. As such, this Court has limited its analysis to the pleadings, which contain facts the Plaintiff may or may not be able to prove at trial. This case, which has been on the docket for nearly five years now, should go forward. As discussed at the hearing, Defendants shall file an Answer in accordance with Fed.R.Civ.P. 12(a). In further motions before the Court, the parties should set forth the facts and claims as to each Defendant sued in his individual capacity.

For the aforementioned reasons, Defendants' Motion to Dismiss Plaintiff's Second Amended Claim is **DENIED** as to Plaintiff's: (1) First Claim for Relief, violation of RICO; and (2) unconstitutional retaliation claim under *Bivens.* Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint is **GRANTED** as to Plaintiff's *Bivens* claims: (1) alleging a violation of the Fourth Amendment; and (2) alleging a violation of procedural and substantive components of the Due Process Clauses of the Fifth and Fourteenth Amendments.