**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 11, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

CLARK S. SPALSBURY, JR.,

        Plaintiff-Appellant,

v.

CYNTHIA L. SISSON; RONALD
SCHULTZ, as County Court Judge,
8th Judicial District, Larimer County,
Colorado; JAMES HIATT, as Chief
and District Court Judge, 8th Judicial
District, Larimer County, Colorado;
SHERLYN K. SAMPSON, personally
and as Clerk of Court, 8th Judicial
District, Larimer County, Colorado;
STATE OF COLORADO; TOWN OF
ESTES PARK, Colorado; ERIC
ROSE, personally and as a sergeant,
Estes Park Police Department,
Colorado; JODI DRING, personally
and as an officer, Estes Park Police
Department, Colorado; GREG
FELSINGER, personally and as
lieutenant and assistant chief, Estes
Park Police Department, Colorado;
COREY PASS, personally and as an
officer, Estes Park Police Department,
Colorado; JAMES A. ALDERDEN,
as Sheriff, Larimer County, Colorado,

        Defendants-Appellees.

_____

CLARK S. SPALSBURY, JR.,

        Plaintiff-Appellant,

No. 06-1193
(D.C. No. 04-cv-1458-PSF-MEH)
(D. Colo.)

v.

TOWN OF ESTES PARK, COLORADO; ERIC ROSE, personally and as a sergeant, Estes Park Police Department, Colorado; JODI DRING, personally and as an officer, Estes Park Police Department, Colorado; GREG FELSINGER, personally and as lieutenant and assistant chief, Estes Park Police Department, Colorado; COREY PASS, personally and as an officer, Estes Park Police Department, Colorado; JAMES A. ALDERDEN, Sheriff, Larimer County, Colorado; LARIMER COUNTY, STATE OF COLORADO, as owner and operator of Larimer County Detention Center; RONALD SCHULTZ, as County Court Judge, 8th Judicial District, Larimer County, Colorado; JAMES HIATT, as Chief and District Court Judge, 8th Judicial District, Larimer County, Colorado; STEPHEN SCHAPANSKI, as District Court Magistrate Judge, 8th Judicial District, Larimer County, Colorado; and SHERLYN K. SAMPSON, personally and as Clerk of Court, 8th Judicial District, Larimer County, Colorado,

     Defendants,

  and

CYNTHIA L. SISSON,

     Defendant-Appellee.

No. 06-1319
(D.C. No. 04-cv-1458-PSF-MEH)
(D. Colo.)

-2-

## ORDER AND JUDGMENT[*]

Before **TACHA**, Chief Judge, **MURPHY** and **HOLMES**, Circuit Judges.

This order and judgment addresses two consolidated appeals filed by plaintiff-appellant Clark S. Spalsbury, Jr. after the district court dismissed his lawsuit against his ex-wife, Cynthia L. Sisson, and various public officials of Larimer County, Colorado. In appeal 06-1193, Mr. Spalsbury challenges the bases for the district court's dismissal of his claims, and in 06-1319, he asserts error with respect to the district court's award of attorneys' fees to Ms. Sisson. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we AFFIRM in both appeals.

## I. Background

*A. Facts*

On July 18, 2003, Mr. Spalsbury was to begin a weekend-long scheduled visitation with his son, James. When he went to pick up James from Ms. Sisson's

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

home, however, an argument ensued, which led to the events giving rise to this lawsuit. Accepting Mr. Spalsbury's version of the facts, as we must in reviewing a Rule 12(b)(6) dismissal, it appears the argument began when Mr. Spalsbury informed Ms. Sisson that he would be returning James one day earlier than planned, at 8:00 p.m. Ms. Sisson became irate and demanded that he return James at 6:00 p.m. When he refused to discuss the matter further, Ms. Sisson approached his car and stood in the open doorway of the passenger side holding a tape recorder. Mr. Spalsbury asked her repeatedly to move away from the car so that he could drive away, but she refused to budge. Exasperated, Mr. Spalsbury walked over to the passenger side and "gently leaned the back of his shoulder against her shoulder, and then used his body weight to slowly start pushing [her] out of his car doorway." R., Doc. 2 at 8. When Ms. Sisson began to lose ground, she became enraged and demanded that Mr. Spalsbury call the police. He dialed 911 and said that he needed assistance in getting Ms. Sisson to back away from his car so that he could leave.

Estes Park police officers Eric Rose and Jodi Dring responded to the scene. They interviewed both Mr. Spalsbury and Ms. Sisson, as well as James and the couple's daughter, who had also witnessed the whole event. After listening to what everyone had to say, officers Rose and Dring concluded that they had to make an arrest under Colorado's mandatory arrest law. *See* Colo. Rev. Stat. § 18-6-803.6(1). Under that law, "[w]hen a peace officer determines that there

-4-

is probable cause to believe that a crime or offense involving domestic violence . . . has been committed, the officer shall, without undue delay, arrest the person suspected of its commission . . . and charge the person with the appropriate crime or offense." *Id.* The officers arrested Mr. Spalsbury and charged him with harassment, child abuse, and domestic violence. He was initially booked at the Estes Park jail, but he was later transferred to the Larimer County Detention Center and placed in the custody of defendant Larimer County Sheriff, James A. Alderden.

After being in custody for three days, Mr. Spalsbury was finally released on Monday, July 21. Since he was not released until the evening, however, he was unable to report to his job as a deputy district attorney in Colorado's 14th Judicial District. He claims that upon his release, his employer immediately placed him on paid suspension and requested police reports and information about the criminal charges filed against him. He further claims that he was eventually fired as a result of his arrest and detention and the criminal charges. On July 31, a Larimer County Court judge dismissed all charges against Mr. Spalsbury on a technicality because he had never been served with the summons and complaint. Days later, however, Mr. Spalsbury received a call from defendant police officer Greg Felsinger, who ordered him to return to the police station so that he could be served with a second summons and complaint, reinstating the dismissed charges.

Mr. Spalsbury complied and returned to the station on August 11, 2003, where he was served by defendant police officer Corey Pass.

Mr. Spalsbury filed numerous motions challenging the criminal charges against him, arguing primarily that the police officers lacked probable cause to arrest him. Eventually, the district attorney filed an ex parte motion to dismiss the charges without responding to any of Mr. Spalsbury's motions. Ultimately, on November 26, all charges against Mr. Spalsbury were dismissed and his criminal trial was vacated.

While the criminal charges against him were pending, Mr. Spalsbury prepared a "misdemeanor complaint" against Ms. Sisson for her actions the evening of July 18, charging her with crimes of false imprisonment, second degree criminal tampering, and domestic violence. R., Doc. 2 at 27. When he attempted to file the complaint, however, the county clerk, defendant Sherlyn K. Sampson, told him she would not formally file the complaint without seeking guidance from her superiors. Shortly thereafter, on the advice of defendant county court judge Ronald Schultz, Ms. Sampson returned the complaint to Mr. Spalsbury without filing it or issuing a new case number. Mr. Spalsbury filed a request for reconsideration, which was referred to defendant James Hiatt, Chief Judge for the Eighth Judicial District. In response, Judge Hiatt instructed Ms. Sampson not to create a new case for Mr. Spalsbury's criminal complaint, and instead to file the document in his pending divorce case.

*B. Procedural History*

Because much of our disposition, in particular with respect to

Mr. Spalsbury's claims against Ms. Sisson, requires an understanding of this

case's complex procedural history, we recount it here at some length. On

August 10, 2004, Mr. Spalsbury filed his first amended complaint,[1] asserting

eleven claims for relief against four categories of defendants. With respect to the

Town of Estes Park and the defendant police officers ("Estes Park defendants"),

he asserted claims under 42 U.S.C. § 1983 for false arrest, false imprisonment,

malicious prosecution, and abuse of process, as well as a liberty interest claim

under the Fourteenth Amendment premised on the harm to his reputation and

employment prospects caused by the defendants' alleged defamatory statements.

He also asserted a state law claim against the town for negligent hiring and

supervision. He named Sheriff Alderden in a claim for false imprisonment.

As to Ms. Sisson, he asserted a claim for relief entitled simply "Crimes/Torts,"

R., Doc. 2 at 22, which included allegations that she committed numerous

criminal and tortious acts against him and conspired with the police officers to

have him arrested. As we explain below, however, Mr. Spalsbury's specific

claims against Ms. Sisson are not relevant to this appeal because he dismissed all

of them voluntarily. Finally, Mr. Spalsbury asserted a due process claim against

---

[1]      He filed his original complaint in July 2004, but that complaint was never
served.

the defendant judges and Ms. Sampson ("judicial defendants"), claiming that they violated his right of equal access to the courts.[2] In the midst of the ensuing motions practice, Mr. Spalsbury tendered a second amended complaint, in which he attempted to clarify some of his claims.

On March 7, 2005, a magistrate judge issued an extensive report recommending that the claims against the Estes Park defendants and Sheriff Alderden be dismissed primarily based on the magistrate judge's conclusion that Mr. Spalsbury's arrest was supported by probable cause. The magistrate judge also denied Mr. Spalsbury's request to file his second amended complaint, but granted him leave to file a third amended complaint, not including claims against the dismissed defendants. In a companion order, however, the magistrate judge included a sharp warning concerning Mr. Spalsbury's continued prosecution of claims against Ms. Sisson and the judicial defendants. The magistrate judge advised Mr. Spalsbury that "his attempt to sue Ms. Sisson in federal court, and his attempt to sue her pursuant to § 1983, [was] frivolous" and that he "ought to abandon this claim before the matter reache[d] a point where he may be made to pay fees and costs." Aplee. Sisson Supp. App. at 57. The magistrate judge further warned Mr. Spalsbury that his claims against the judicial defendants were

---

[2] Mr. Spalsbury also asserted a number of claims challenging various Colorado statutes, but since he failed to name a defendant with respect to these claims, and raises no arguments concerning them in his appeals, we need not discuss them here.

almost certainly barred by judicial immunity and that the likelihood of him convincing a federal court to instruct the state court in matters related to his on-going dispute with Ms. Sisson was "virtually zero." *Id.* at 58.

Over Mr. Spalsbury's objections, on April 21, the district court issued an order accepting and adopting the magistrate judge's recommendation. The court agreed that officers Rose and Dring had probable cause to arrest Mr. Spalsbury under Colorado's criminal harassment statute because Mr. Spalsbury admitted to using his body weight to push Ms. Sisson away from his car. And the court concluded that the dismissal of the criminal charges against Mr. Spalsbury did not ipso facto establish a lack of probable cause. Therefore, it held that all of Mr. Spalsbury's claims premised on the asserted lack of probable cause must be dismissed. His abuse of process, malicious prosecution, and defamation claims were also dismissed because the court concluded that Mr. Spalsbury failed to state facts meeting the elements of those claims. The court therefore granted the Estes Park defendants' and Sheriff Alderden's motions to dismiss, leaving only Mr. Spalsbury's claims against the judicial defendants and Ms. Sisson.

On June 11, Mr. Spalsbury filed a "Dismissal Request As Directed By Magistrate" claiming that the magistrate judge had orally ordered him to dismiss his remaining claims against Ms. Sisson and the judicial defendants. R., Doc. 120 at 1. He stated that while he disagreed with the magistrate judge's legal conclusions, he had no choice but to dismiss his claims if the district court would

not stay the magistrate judge's ruling. Contemporaneously, he filed an "Objection to Magistrate's Order" formally objecting to the oral order. *Id.*, Doc. 121. In this document, Mr. Spalsbury again agreed to dismiss without prejudice his claims against Ms. Sisson, relying on the magistrate judge's conclusion that the court lacked supplemental jurisdiction over those claims. He changed his position, however, regarding his claims against the judicial defendants, indicating that he wished to proceed with those claims, despite the magistrate judge's warning that they too were subject to dismissal on other grounds. Curiously, however, two days later, Mr. Spalsbury filed his third amended complaint[3] naming as defendants Ms. Sisson and Sheriff Alderden, along with the judicial defendants. On July 8, Mr. Spalsbury filed an "Emergency Request For Immediate Stay of Magistrate's Order," claiming that during a July 1 status conference, the magistrate judge directed him to dismiss his complaint or face sanctions. *Id.*, Doc. 119. In it, Mr. Spalsbury stated that he "disagree[d] with the Magistrate's legal conclusions, but [was] filing a dismissal of all claims except his 7th claim for relief (raising access to courts, due process, and equal protection)" against the judicial defendants. *Id.* at 1. A few weeks later, the judicial defendants and Ms. Sisson moved to dismiss the third amended complaint.

---

[3] Rather than call it his third amended complaint, Mr. Spalsbury titled this document "June, 2005 Amendment Pursuant to March 7 Order." *Id.*, Doc. 107.

-10-

On November 16, the district court issued an order responding to Mr. Spalsbury's repeated statements concerning the magistrate judge's alleged order that he dismiss his claims or face sanctions. Having reviewed the courtroom minutes, the minute order, and the transcript of the July 1 status conference, the court concluded that the record reflected no such order. Rather, the court concluded it was clear from the transcript that Mr. Spalsbury had been given an opportunity to further research his claims and *consider* a voluntary dismissal. In the end, Mr. Spalsbury did not dismiss his claims against the judicial defendants. Accordingly, the court disposed of all remaining claims in an order dated March 29, 2006.

In that order, the court first concluded that Mr. Spalsbury had voluntarily dismissed his claims against Ms. Sisson pursuant to Federal Rule of Civil Procedure 41(a)(2).

> Under F.R.Civ.P. 41(a)(2), a court may order dismissal "at the plaintiff's instance." Here, dismissal of the claims against Ms. Sisson certainly comes "at the plaintiff's instance." Mr. Spalsbury has never sought to withdraw his dismissal request as to her, despite his ongoing and contradictory efforts to continue litigating other aspects of the case. Mr. Spalsbury has on more than one occasion represented to this Court that he wishes to dismiss his claims against Ms. Sisson.

R., Doc. 188 at 4. The court went on to note that given Mr. Spalsbury's voluntary dismissal of Ms. Sisson, it did not need to decide whether it had supplemental jurisdiction over those claims. Finally, based on Rule 41(a)(2)'s directive that a

-11-

dismissal without prejudice be "upon such terms and conditions as the court deems proper," the court held that Mr. Spalsbury's voluntary dismissal of Ms. Sisson be accompanied by an order directing him to pay her attorneys' fees and costs. As to Mr. Spalsbury's claims against the judicial defendants, the court held that he had failed to show an unconditional right to initiate criminal charges against Ms. Sisson. Thus, his constitutional rights were not violated by those defendants' refusal to file his criminal complaint. In addition, the court concluded Mr. Spalsbury's claims against the judicial defendants, including Ms. Sampson, were barred by absolute judicial immunity. It therefore dismissed all claims against the judicial defendants with prejudice, but stopped short of awarding those defendants fees and costs.

Ms. Sisson's motion for attorneys' fees soon followed, requesting fees in the amount of $9,169.75 and costs of $100.00. Mr. Spalsbury objected to the motion, arguing generally that the rates charged and time expended were excessive. He also claimed that Ms. Sisson had not actually paid her attorneys the entire amount for which she sought reimbursement. He requested a three-day evidentiary hearing to enable him to cross-examine witnesses and also sought permission to serve written discovery concerning the fee request.

The district court denied Mr. Spalsbury's request for discovery, explaining that its award of attorneys' fees to Ms. Sisson was not an invitation "to embark on satellite litigation, further delaying the completion of this suit," R., Doc. 203 at 2,

-12-

and concluding that Mr. Spalsbury had failed to show a good faith basis for discovery under the circumstances. The court subsequently issued an order granting Ms. Sisson's motion for attorneys' fees and denying Mr. Spalsbury's request for an evidentiary hearing. With respect to the hearing, the court reasoned that its negative aspects would far outweigh any potential benefits. And as to the fee request, the court held that the amount requested was neither unexpectedly excessive nor unreasonable and it reiterated that Mr. Spalsbury had failed to cite any factual basis for his contention that the fees were excessive or not actually paid by Ms. Sisson. Ultimately, the court determined a fee award of $8,750.00 was appropriate, in addition to $100.00 in costs.

Mr. Spalsbury then filed appeals both of the district court's decision to dismiss his claims and its award of attorneys' fees to Ms. Sisson.

## II. Discussion

We review dismissals pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) de novo. *High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1180 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 2134 (2007). The grant of a voluntary dismissal pursuant to Rule 41(a)(2), however, is reviewed for abuse of discretion. *County of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1047 (10th Cir. 2002).

*A. Estes Park Defendants and Sheriff Alderden*

Mr. Spalsbury claims that the Estes Park defendants violated his Fourth Amendment rights by arresting him without probable cause on the evening of July 18, 2003. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). In determining whether an officer had probable cause to make an arrest, we look objectively at the reasonable conclusions that could have been drawn based on the facts known to the officer at the time of the arrest. *See id.* at 152-53. In *Devenpeck*, the Supreme Court clarified that an arrest is lawful under the Fourth Amendment so long as probable cause existed as to any offense that could be charged. *See id.* Thus, "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).[4]

---

[4] Based on the facts alleged in the first amended complaint, we have our doubts as to whether there was probable cause to believe Mr. Spalsbury committed the offense of child abuse. As the Second Circuit noted in *Jaegly*, however, there has long been a consensus among the courts of appeals that an arrest is lawful so long as one of the charged crimes is supported by probable cause, even if probable cause is lacking as to other charged crimes. 439 F.3d at 153 n.1 (collecting cases). The district court was, therefore, correct to limit its inquiry to the charge of harassment.

Focusing specifically on the charge of harassment, Mr. Spalsbury claims the arresting officers could not have had probable cause to believe he committed that offense because the explanation he gave them foreclosed any possibility that he acted with criminal intent towards Ms. Sisson. The facts divulged in Mr. Spalsbury's complaint reveal that officers Rose and Dring arrived at Ms. Sisson's home in response to a 911 call to find Ms. Sisson and Mr. Spalsbury engaged in a heated argument. Mr. Spalsbury admitted that he tried to physically move Ms. Sisson away from his car, and that she resisted, became enraged, and demanded that he call the police. Under Colorado law, "a person commits harassment if, with intent to harass, annoy, or alarm another person, he . . . [s]trikes, shoves, kicks, or otherwise touches a person or subjects him to physical contact." Colo. Rev. Stat. § 18-9-111(1)(a). Colorado's domestic violence statute requires an officer to make an arrest when he has probable cause to believe that a crime involving domestic violence has occurred. *See* Colo. Rev. Stat. § 18-6-803.6(1). We agree with the district court that based on these facts, the police officers had probable cause to believe Mr. Spalsbury had committed the offense of harassment and properly placed him under arrest pursuant to Colorado law.

Mr. Spalsbury zealously argues, and claims he told the officers at the time, that he acted with no criminal intent towards Ms. Sisson and was merely trying to defend himself and his property. "A policeman, however, is under no

-15-

obligation to give any credence to a suspect's story," and even a plausible explanation in no way "require[s] the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988); *see Romero v. Fay*, 45 F.3d 1472, 1480 (10th Cir. 1995) (citing *Criss* and holding that plaintiff's protestations of innocence did not require defendants to forgo arrest). The district court, therefore, properly dismissed Mr. Spalsbury's § 1983 claim premised on false arrest and false imprisonment. It follows that Mr. Spalsbury's false imprisonment claim against Sheriff Alderden was also properly dismissed. Not only did the police officers have probable cause to arrest Mr. Spalsbury, but the Sheriff, as the official charged with maintaining custody of Mr. Spalsbury, had no independent duty to investigate his every claim of innocence. *See Scull v. New Mexico*, 236 F.3d 588, 598 (10th Cir. 2000).

In a separate claim for relief entitled "Malicious Prosecution; Abuse of Process," R., Doc. 2 at 23, Mr. Spalsbury accuses the Estes Park defendants of violating his constitutional rights by pursuing unjustified criminal charges against him with the purpose of intimidating him and avoiding charging Ms. Sisson for her criminal acts. It has long been established that a misuse of legal procedure may be so egregious as to amount to a deprivation of constitutional dimensions compensable under § 1983. *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996). In determining whether a plaintiff has stated such a claim, however, we

start with the common law elements of malicious prosecution. *Id.* Only if all the elements are met, need we proceed to the ultimate determination of whether the plaintiff has proven a Fourth Amendment violation. *See id.* Under Colorado law, one of the elements for malicious prosecution is that the defendant acted without probable cause. *Hewitt v. Rice*, 154 P.3d 408, 411 (Colo. 2007) (listing elements). Since we have already determined that the Estes Park defendants had probable cause to arrest Mr. Spalsbury, his § 1983 claim premised on malicious prosecution was properly dismissed.

We reach the same conclusion with respect Mr. Spalsbury's claim premised on abuse of process. "Use of a legal proceeding in an improper *manner* is an essential element of an abuse of process claim." *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. Ct. App. 1994). "Classic examples of the requisite improper use include the use of process to accomplish a coercive goal which is not the intended legal purpose of the process." *Id.* Therefore, even if Mr. Spalsbury's allegations concerning the defendants' alleged ulterior motives are true, there was no abuse of process if the process was used for the purpose for which it was intended. *See id.* Mr. Spalsbury's first amended complaint contains no facts to indicate that the Estes Park defendants arrested and filed criminal charges against him for any other purpose than to prosecute him for the offenses that occurred on July 18, 2003. As such, he has failed to state an abuse of process claim.

-17-

Finally, Mr. Spalsbury asserts that false statements made by the Estes Park defendants in connection with their filing of criminal charges against him damaged his reputation in the local community, caused him to lose his job, and made it impossible for him to gain future employment. The district court correctly interpreted this claim as a liberty interest claim under the Due Process Clause of the Fourteenth Amendment.

Damage to one's reputation, standing alone, is insufficient to implicate due process protections. The Supreme Court has held, however, that under certain circumstances a protectible liberty interest may be implicated "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972) (quotation and alteration omitted). In *Jensen v. Redev. Agency of Sandy City*, 998 F.2d 1550, 1558 (10th Cir. 1993), we held that to be successful on a deprivation of liberty interest claim, a plaintiff must show (1) that the defendant published false and stigmatizing information; and (2) that the alleged stigmatization was entangled with some further interest. We gave as one example a plaintiff who alleges present harm to established business relationships. *Id.* And we noted in particular that "[d]amage to prospective employment opportunities is too intangible to constitute deprivation of a liberty interest." *Id.* at 1559. Later we refined the test in response to the very type of claim that Mr. Spalsbury asserts here, involving "a liberty interest in [the plaintiff's] good

name and reputation as it affects [his] property interest in continued employment." *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1153 (10th Cir. 2001) (quotation omitted). We held:

> First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities. And fourth, the statements must be published.

*Id.* (quotation and italics omitted).

Mr. Spalsbury's liberty interest claim fails for two reasons. First, he has no colorable claim of falsity, as the magistrate judge deftly explained in his March 7, 2005, report and recommendation.

> [P]laintiff is unable to prove that the Estes Park defendants defamed him with false information. The facts relied upon by the police to support their decision to arrest, at the very least, are the facts that are presented by plaintiff in his [first amended complaint]. Plaintiff merely disagrees with the credibility decisions, inferences and conclusions that the police elected to draw from those facts. . . . [P]laintiff's facts reflect the existence of probable cause for his arrest, and plaintiff is therefore unable to show any falseness in relation to his arrest.

R., Doc. 74 at 29. Second, Mr. Spalsbury failed to allege any facts that would satisfy the third prong of the *Stidham* test. In that case, we made clear that to be actionable under § 1983, the alleged defamation must have been uttered incident to plaintiff's termination. *Stidham*, 265 F.3d at 1154; *see Siegert v. Gilley*, 500 U.S. 226, 234 (1991). We have no doubt that the criminal charges levied

against Mr. Spalsbury damaged his reputation and contributed to him being fired. But as the district court pointed out, Mr. Spalsbury was not employed by the Estes Park defendants, and those defendants played no role in the decision to fire him. In *Siegert*, the Supreme Court recognized that defamation plaintiffs typically show special damages and out-of-pocket losses flowing from the injury to their reputations. It held, however, that "so long as [the] damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a [§ 1983] action." 500 U.S. at 234. The district court correctly dismissed Mr. Spalsbury's liberty interest claim.[5]

## B. The Judicial Defendants

In his numerous filings, Mr. Spalsbury explains in detail the Colorado criminal procedure rules that he claims entitled him to initiate a criminal proceeding against Ms. Sisson. Unlike the district court, we decline to indulge this argument because regardless of Mr. Spalsbury's right to initiate a criminal prosecution under state law, the judicial defendants enjoy absolute immunity from his § 1983 claims unless they acted without jurisdiction. *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1189 (10th Cir. 2003). Even if the judicial defendants' acts violated Colorado law, they are nonetheless immune from civil damages

---

[5]    Since Mr. Spalsbury failed to state any constitutional violations as against the Estes Park police officers, the district court correctly dismissed his negligence claim against the Town of Estes Park. *Taylor*, 82 F.3d at 1564 (holding that claim against supervisory authority is properly dismissed once court concludes that employee committed no constitutional violation).

liability because they clearly did not act in the absence of all jurisdiction. *See id.* And this immunity also extends to Ms. Sampson, who, as the court clerk, is accused of no more than assisting Judges Schultz and Hiatt in the discharge of their judicial functions. *See Trackwell v. United States Gov't*, 472 F.3d 1242, 1247 (10th Cir. 2007) (explaining clerk's derivative immunity).

Furthermore, to the extent Mr. Spalsbury's third amended complaint seeks an order directing the judicial defendants to accept filing of his "'citizens' misdemeanor complaint," R., Doc. 107 at 22, the district court clearly lacked jurisdiction to award such relief. Federal courts have no authority to "direct state courts or their judicial officers in the performance of their duties." *Van Sickle v. Holloway*, 791 F.2d 1431, 1436 n.5 (10th Cir. 1986) (quotation omitted); *see also Smith v. United States Ct. of Appeals, Tenth Cir.*, 484 F.3d 1281, 1287 (10th Cir. 2007) ("declin[ing] to recast [plaintiff's] request for mandamus as a § 1983 claim" and "adher[ing] to our general prohibition on issuing a writ of mandamus to a state court judge"). Finally, as Mr. Spalsbury has alleged no facts showing he was in any way foreclosed from filing a grievance in the state court system regarding the acts of the judicial defendants, he has not begun to show a deprivation of a constitutional right. *See generally Olson v. Hart*, 965 F.2d 940, 943 (10th Cir. 1992) (explaining that injunctive relief under § 1983 is not available absent deprivation of federal right). Accordingly, the district court committed no error in dismissing his claims against the judicial defendants.

*C. Ms. Sisson*

　　*i. Dismissal Under Rule 41(a)(2)*

As we noted above, the district court dismissed all claims against Ms. Sisson pursuant to filings that it interpreted as requests to dismiss under Rule 41(a)(2). Mr. Spalsbury now argues that he agreed to dismiss his claims against Ms. Sisson under duress based on the magistrate judge's faulty legal reasoning as to the court's jurisdiction and his threat of sanctions. We are not convinced by Mr. Spalsbury's attempt to undermine his own decision, which was clearly made with the intent to prosecute the same claims against Ms. Sisson in state court. Mr. Spalsbury has been a licensed attorney for over twenty years. *See* R., Doc. 2 at 5-6. As such, the magistrate judge acted well within his discretion in reminding Mr. Spalsbury that his continued prosecution of any frivolous claims might result in sanctions. In his March 7, 2005 companion order, the magistrate judge certainly questioned whether the court had supplemental jurisdiction over the claims against Ms. Sisson. But he specifically granted Mr. Spalsbury leave to file a third amended complaint after urging him to thoroughly research the viability of all remaining claims.

Mr. Spalsbury responded by filing numerous conflicting documents concerning whether he agreed with the magistrate's conclusions as to supplemental jurisdiction. In the end, however, it is clear that he voluntarily chose to dismiss the claims against Ms. Sisson without prejudice so that he could

refile them in state court, as is evident from Mr. Spalsbury's response to

Ms. Sisson's motion to dismiss:

> Based on the Court's oral ruling and threat that continuing any claims against Sisson in Federal court would be improper, Spalsbury requested dismissal of claims against Sisson for lack of jurisdiction so they could be pursued in state court. . . .
>
> . . . The Court must simply dismiss Spalsbury's claims against Sisson on the grounds of lack of jurisdiction, that is what Spalsbury sought in July to comply with this Court's orders, and Spalsbury concedes the claims must be dismissed for lack of Federal jurisdiction based on the Court's prior rulings.

*Id.*, Doc. 149 at 4, 5. Based on our review of the record, we also agree with the

district court's finding that Mr. Spalsbury was never ordered, orally or otherwise,

to dismiss his claims against Ms. Sisson. In short, Mr. Spalsbury has failed to

convince us that the district court abused its discretion in dismissing his claims

against Ms. Sisson under Rule 41(a)(2).

ii. *Award of Attorneys' Fees*

Finally, we address Mr. Spalsbury's appeal of the district court's orders

granting Ms. Sisson's motion for attorneys' fees and denying his requests for

discovery and an evidentiary hearing. We review each of these decisions for an

abuse of discretion. *See Santana v. City & County of Denver*, 488 F.3d 860, 867

(10th Cir. 2007) (applying abuse of discretion standard to discovery rulings);

*Robinson v. City of Edmond*, 160 F.3d 1275, 1286 (10th Cir. 1998) (applying

abuse of discretion standard to decision denying hearing); *cf. AeroTech, Inc. v.*

-23-

*Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997) (applying abuse of discretion standard to decision not to award fees under Rule 41(a)(2)).

Rule 41(a)(2) provides that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Courts have long recognized that "[w]hen a plaintiff dismisses an action without prejudice, a district court may seek to reimburse the defendant for his attorneys' fees because he faces a risk that the plaintiff will refile the suit and impose duplicative expenses upon him." *Aerotech, Inc.*, 110 F.3d at 1528 (citing *Cauley v. Wilson*, 754 F.2d 769, 771-72 (7th Cir. 1985)). Here, the district court acted well within its discretion in awarding fees to Ms. Sisson, particularly in light of Mr. Spalsbury's expressed intent to refile the dismissed claims in state court. *See* R., Doc. 188 at 5 (district court order).

We also conclude the district court acted within its discretion in denying Mr. Spalsbury's requests for discovery and an evidentiary hearing. In support of her fee request, Ms. Sisson attached (a) unredacted copies of her lawyers' billing entries, which contained detailed descriptions of all charges, organized by date, including the time increment billed, the billing rate, and the total amount for each attorney working on her case; (b) copies of actual invoices received from her attorneys, which included amounts paid and amounts outstanding; and (c) affidavits from the attorneys setting forth their legal experience and attesting

to the veracity of their charges.  Mr. Spalsbury failed to make any specific challenges to any of this information and never articulated what else he hoped to find through written discovery.  Under these circumstances, the district court did not abuse its discretion in denying his discovery request.  The same is true with respect to his request for an evidentiary hearing.  Faced with similar circumstances in *Robinson*, we held that "[a] district court does not abuse its discretion when it fails to hold a hearing at which the parties will simply reiterate arguments they already have made in their briefs."  160 F.3d at 1286.  Since the plaintiffs failed to show that they were denied the opportunity to present new, critical information, we upheld the court's decision not to hold an evidentiary hearing on the attorneys' fee issue.  For the same reason, we reach the same conclusion here.

The judgment of the district court and its order regarding attorneys' fees are AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge