PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 5/7/96**

TENTH CIRCUIT

DALE TAYLOR,

      Plaintiff - Appellant,

  v.

LLOYD MEACHAM and UINTAH COUNTY,

      Defendants - Appellees.

No. 95-4008

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 93-CV-883)**

Gregory J. Sanders (Sandra L. Steinvoort with him on the briefs), Kipp and Christian, P.C., Salt Lake City, Utah, Attorneys for Plaintiff-Appellant.

Robert R. Wallace, Hanson, Epperson & Smith, P.C., Salt Lake City, Utah, Attorneys for Defendants - Appellees.

Before PORFILIO, ANDERSON, and TACHA, Circuit Judges.

**ANDERSON**, Circuit Judge.

Dale Taylor brought this 42 U.S.C. § 1983 action against Uintah County Sheriff Lloyd Meacham, in his individual and official capacities, claiming he -- Mr. Taylor -- was illegally arrested, charged with capital homicide in connection with a murder and rape which occurred twenty years previously, and jailed for seven weeks. When DNA tests led County authorities to drop the charges against Mr. Taylor, he was released from custody. Mr. Taylor included supplemental state claims for false arrest, malicious prosecution, and false imprisonment. The district court granted defendants' motions for summary judgment. For the reasons set out below, we hold: (1) the Fourth Amendment governs a malicious prosecution claim brought under § 1983; (2) Sheriff Meacham had probable cause to seek and obtain an arrest warrant and, therefore, committed no Fourth Amendment violation; (3) any malicious prosecution claim against Sheriff Meacham based on events occurring after Mr. Taylor's arrest is vitiated, in this case, by the preliminary hearing and judicial determination to bind Mr. Taylor over for trial; and (4) because Sheriff Meacham committed no constitutional violation, the County is not liable. We therefor affirm the district court's decision.

## BACKGROUND

On November 26, 1972, Gregory Nickells was shot and killed while sitting in his car with a female companion, Ranelle Stanger, at a remote overlook near the city of Vernal in Uintah County, Utah. Ms. Stanger, along with Mr. Nickells' body, was driven

around for some time by the murderer and his companion. Ms. Stanger was raped by each man and eventually released. Mr. Nickells' car was set on fire, with his body inside.

Ms. Stanger gave a lengthy statement at the time of the murder and rape, describing the incident and the two perpetrators. Approximately one and one-half years later, in March 1974, a Salt Lake County Sheriff's Office detective met with Susan Dixon, Mr. Taylor's stepdaughter, who gave a statement implicating Mr. Taylor in the Nickells murder. Soon thereafter Ms. Dixon gave another statement to the detective and the Salt Lake County Attorney. However, no arrests were made and the case became inactive.

In 1990, defendant Lloyd Meacham was elected Sheriff of Uintah County. He reopened the Nickells murder case and conducted further investigation. He found the statement of Susan Dixon, reinterviewed her twice and reinterviewed Ms. Stanger twice. He eventually went to the Uintah County Attorney, Harry Souvall, with the evidence he had collected. Mr. Souvall authorized prosecution pursuant to Utah Code Ann. §§ 17-18-1(1)(b), (3)(b), and 77-2-1. Sheriff Meacham prepared an Affidavit of Probable Cause and executed it on August 11, 1992, before Judge A. Lynn Payne, who issued a warrant for Mr. Taylor's arrest. Mr. Taylor was arrested at his home in Salt Lake City on August 12, 1992, and charged with first degree murder. Pursuant to his wife's consent, Mr. Taylor's home and cars were searched.

On September 10 and 11, 1992, a preliminary hearing was conducted before Judge John R. Anderson. Mr. Taylor was represented by counsel. Both his stepdaughter, Susan Dixon, and Ms. Stanger testified, as well as other witnesses. The court found the evidence sufficient to establish probable cause and bound Mr. Taylor over for trial.

Subsequently, before Mr. Taylor was tried for the murder and rape, a pair of unlabeled women's pants were found in the evidence area of the Uintah County Sheriff's Department. No one, including Ms. Stanger, could positively identify them as belonging to Ms. Stanger. They were nonetheless sent to a crime lab for analysis, and the DNA results from evidence on the pants did not match Mr. Taylor's DNA. The prosecutor, Mr. Souvall, thereafter dropped the charges against Mr. Taylor. Mr. Taylor had been incarcerated in the Uintah County jail for seven weeks before he was released. This § 1983 action followed.

In his complaint, Mr. Taylor alleged that Sheriff Meacham's investigation and his decision to charge Mr. Taylor were "done with reckless disregard for the actual facts and included willful misstatements of fact and lies to individuals who were interviewed, to prosecutors, and to courts." Am. Compl. at ¶ 14, Appellant's App. at 3. He further alleged that the arrest was "without probable cause and constitutes circumstances of wrongful arrest and malicious prosecution." Id. at ¶ 15. He alleged that the above actions amounted to a denial of due process. He sued Sheriff Meacham in his individual capacity and in his official capacity as the "final policymaking authority" for Uintah County. Id. at

¶¶ 21-22, Appellant's App. at 6. He included supplemental state law causes of action for malicious prosecution, false imprisonment and false arrest. He sought actual damages, punitive damages and attorney's fees.

Sheriff Meacham filed motions for summary judgment, on the ground that he was qualifiedly immune from suit in his individual capacity and on the ground that he, in his official capacity, and Uintah County, were immune from suit because the allegedly unlawful actions taken against Mr. Taylor were not pursuant to a custom or policy, nor was Sheriff Meacham the final policy-making authority for either investigations or prosecutions. Mr. Taylor filed a cross-motion for partial summary judgment. The district court granted Sheriff Meacham's motions, both in his individual and his official capacities, and the motion of Uintah County, and denied Mr. Taylor's motion for partial summary judgment.[1]

---

[1]The district court granted defendants' motions and denied Mr. Taylor's with little explanation, stating as follows:

> (1) the Motion of Uintah County and Sheriff Meacham in his Official Capacity for Summary Judgment, for the reasons stated in defendants' memoranda and on the record is granted, and Plaintiff's Cross-Motion for Partial Summary Judgment is denied for the same reasons; and
> (2) the Motion of Lloyd Meacham in his Individual Capacity for Summary Judgment is granted on the grounds that immunities apply to him under the circumstances, that he was at least qualifiedly immune.

Summ. J. at 2, Appellant's App. at 326.

## DISCUSSION

We review the district court's grant of summary judgment de novo. <u>Pallottino v. City of Rio Rancho</u>, 31 F.3d 1023, 1026 (10th Cir. 1994). When a defendant asserts qualified immunity in a summary judgment context, "we apply special rules to determine whether the motion was properly granted or denied." <u>Pino v. Higgs</u>, 75 F.3d 1461, 1467 (10th Cir. 1996). We must "first ask if a plaintiff has asserted the violation of a constitutional right at all, and then assess whether that right was clearly established at the time of a defendant's actions." <u>Id.</u> (quoting <u>Gehl Group v. Koby</u>, 63 F.3d 1528, 1533 (10th Cir. 1995)); <u>see</u> <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."). Thus, to avoid summary judgment on qualified immunity grounds, a plaintiff must "'present facts which if true would constitute a violation of clearly established law.'" <u>Pueblo Neighborhood Health Ctrs., Inc. v. Losavio</u>, 847 F.2d 642, 646 (10th Cir. 1988) (quoting <u>Dominique v. Telb</u>, 831 F.2d 673, 677 (6th Cir. 1987)). "'Whether an asserted federal right was clearly established at a particular time . . . presents a question of law . . . [that] must be resolved de novo on appeal.'" <u>Romero v. Fay</u>, 45 F.3d 1472, 1475 (10th Cir. 1995) (quoting <u>Elder v. Holloway</u>, 114 S. Ct. 1019, 1023 (1994) (citation omitted)).

Mr. Taylor alleges that his wrongful arrest and seven-week detention constituted an unreasonable seizure and deprivation of his liberty, in violation of the Fourth, Fifth and Fourteenth Amendments. In Albright v. Oliver, 114 S. Ct. 807 (1994), a plurality of the Supreme Court held that the Fourth Amendment governed "pretrial deprivations of liberty." Id. at 813. Fourteenth Amendment substantive due process standards have no applicability. We therefore address Mr. Taylor's claim only in a Fourth Amendment context.

Mr. Taylor alleges wrongful arrest and malicious prosecution as the basis for his § 1983 claim. As the Supreme Court has observed, while there is "'an embarrassing diversity of judicial opinion'" on the question of whether a malicious prosecution claim is actionable under § 1983, "[m]ost of the lower courts recognize some form of malicious prosecution action under § 1983." Albright, 114 S. Ct. at 811 n.4 (quoting Albright v. Oliver, 975 F.2d 343, 345 (4th Cir. 1992), aff'd on other grounds, 114 S. Ct. 807 (1994)). See Brummett v. Camble, 946 F.2d 1178, 1180-81 n.2 (5th Cir. 1991) (collecting cases on the question), cert. denied, 504 U.S. 965 (1992). Our court has recognized the viability of malicious prosecution claims under § 1983, as well as claims for wrongful arrest. See Wolford v. Lasater, 78 F.3d 484 (10th Cir. 1996); Romero, 45 F.3d 1472; Cottrell v. City of Kaysville, 994 F.2d 730 (10th Cir. 1993); Anthony v. Baker, 955 F.2d 1395 (10th Cir. 1992); Robinson v. Maruffi, 895 F.2d 649 (10th Cir. 1990).

While most circuit courts recognize that a malicious prosecution claim is cognizable under § 1983, differences arise over the elements necessary to establish such a claim. Some courts hold that the "elements of liability for the constitutional tort of malicious prosecution under § 1983 coincide with those of the common law tort." Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988); see also Eugene v. Alief Indep. Sch. Dist., 65 F.3d 1299, 1303 (5th Cir. 1995) ("This circuit has explicitly held that malicious prosecution, false arrest and bodily harm are actionable under Section 1983 because they violate the Fourth and Fourteenth Amendments."); Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir. 1994) ("Though section 1983 provides the federal claim, we borrow the elements of the underlying malicious prosecution tort from state law."); Strength v. Hubert, 854 F.2d 421, 425-26 (11th Cir. 1988). Other courts require the showing of an injury of a constitutional magnitude, as well as the traditional elements of the state tort of malicious prosecution. See Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995) ("'In some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right;' still, it is only the violation of the constitutional right that is actionable and compensable under § 1983.") (quoting Carey v. Piphus, 435 U.S. 247, 258 (1978)), petition for cert. filed, 64 U.S.L.W. 3642 (U.S. Jan. 19, 1996) (No. 95-1452); Kohl v. Casson, 5 F.3d 1141, 1145 (8th Cir. 1993) ("This claim fails because a claim of malicious prosecution, without more, does not state a claim under 42 U.S.C. § 1983, which provides redress only for federal

constitutional or statutory violations."); Mahoney v. Kesery, 976 F.2d 1054, 1060 (7th Cir. 1992) (holding that although "malicious prosecution as such" is not actionable under the Constitution, it "can be a link in a chain showing a deprivation of liberty or property without due process of law"); Torres v. Superintendent of Police, 893 F.2d 404, 409 (1st Cir. 1990) (plaintiff alleging malicious prosecution claim must prove elements of state malicious prosecution tort but also must show the "misuse of the legal proceedings . . . so egregious as to subject the individual to a deprivation of a constitutional dimension"); Coogan v. City of Wixom, 820 F.2d 170, 174 (6th Cir. 1987) (same); Usher v. City of Los Angeles, 828 F.2d 556, 561-62 (9th Cir. 1987) ("[T]he general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy. . . . However, 'an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights.'") (quoting Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir. 1985) (en banc) (other citation omitted)); cf. Reid v. New Hampshire, 56 F.3d 332, 341 (1st Cir. 1995) ("Since New Hampshire recognizes the common-law torts of false arrest . . . and malicious prosecution, . . . the claim that Reid was arrested without probable cause should have been addressed under New Hampshire law, not section 1983.").[2]

---

[2]We have cited a non-exclusive list of cases addressing the availability and elements of a § 1983 action for malicious prosecution. There are others, and the general

(continued...)

Our own circuit has not always written consistently on this issue. In Lusby v. T.G. & Y. Stores, 749 F.2d 1423, 1431 (10th Cir. 1984), cert. denied, 474 U.S. 818 (1985), we stated that "[m]alicious prosecution does not automatically constitute a denial of due process." We further observed, however, that "if the misuse of the legal procedure is egregious there may be a deprivation of constitutional dimensions for which a plaintiff can invoke § 1983." Id. We reiterated that view in Anthony v. Baker, 767 F.2d 657, 662-63 (10th Cir. 1985).[3] In Robinson, 895 F.2d at 654, on the other hand, we appeared to require only the common law elements of malicious prosecution.[4] Most recently, we stated that "[i]t is generally accepted that the common law of torts is the starting point for determining the contours of a malicious prosecution claim under § 1983." Wolford, 78 F.3d at 489. We went on in Wolford, however, to consider whether the plaintiff had

[2](...continued)
confusion surrounding this area is exemplified by the conflicting opinions within many circuits. Compare Singer, 63 F.3d at 116 (while common law tort actions may parallel constitutional claims, "it is only the violation of the constitutional right that is actionable and compensable under § 1983.") with Cook, 41 F.3d at 79 ("Though section 1983 provides the federal claim, we borrow the elements of the underlying malicious prosecution tort from state law.")

[3]We note, however, that those decisions of our court requiring an "egregious" misuse of the legal procedure for a § 1983 malicious prosecution claim proceeded on the basis that the Fourteenth Amendment's due process clause was the relevant constitutional provision. Albright has changed that, holding that a § 1983 malicious prosecution claim does not implicate the Fourteenth Amendment's substantive due process standards.

[4]The Supreme Court in Albright cited Robinson as being among those circuit court cases which allow a § 1983 malicious prosecution claim to proceed with only the common law elements of malicious prosecution. See Albright, 114 S. Ct. at 811 n.4.

- 10 -

established a Fourth Amendment violation. Reconciling these various cases, we conclude that our circuit takes the common law elements of malicious prosecution as the "starting point" for the analysis of a § 1983 malicious prosecution claim, but always reaches the ultimate question, which it must, of whether the plaintiff has proven a <u>constitutional</u> violation. Following <u>Albright,</u> in the § 1983 malicious prosecution context, that constitutional right is the Fourth Amendment's right to be free from unreasonable seizures.[5]

As we acknowledged with respect to New Mexico tort law in <u>Wolford</u>, lack of probable cause is an essential element of the tort of malicious prosecution under Utah tort law. <u>Hodges v. Gibson Prods. Co.</u>, 811 P.2d 151, 158 (Utah 1991). Similarly, an arrest

---

[5]As many courts have observed, in many ways <u>Albright</u> muddied the waters rather than clarified them. <u>Albright</u>'s discussion about the Fourth Amendment governing pretrial deprivations of liberty is *dicta*, inasmuch as Mr. Albright never alleged a Fourth Amendment violation. Thus, the Supreme Court specifically avoided deciding whether a Fourth Amendment malicious prosecution claim would succeed.

Moreover, it is unclear how far the Fourth Amendment's protection against unreasonable "seizures" can reach in the pretrial context. In <u>Albright</u>, the petitioner, Mr. Albright, had voluntarily submitted to the arrest process, and was released after he posted bail. The Supreme Court did not decide, as it did not need to, whether he remained effectively "seized" in that situation. Justice Ginsburg's concurrence suggests a theory under which a person is effectively "seized" for constitutional purposes as long as a prosecution is pending. <u>See Albright</u>, 114 S. Ct. at 815-16 (Ginsburg, J., concurring). <u>See generally</u> <u>Reed v. City of Chicago,</u> 77 F.3d 1049, 1053-54 (7th Cir. 1996); <u>Singer v. Fulton County Sheriff</u>, 63 F.3d at 117 & n.6.

In this particular case, however, the "seizure" issue is fairly straightforward, because Mr. Taylor remained in detention, and therefore effectively "seized," throughout the time period in question.

warrant must be supported by probable cause to comply with the Fourth Amendment. "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." Wolford, 78 F.3d at 489 (citing Fed. R. Crim. P. 4; Wong Sun v. United States, 371 U.S. 471, 481 n.9 (1963)).

Mr. Taylor alleges that he was illegally seized -- arrested -- and charged with first degree murder without probable cause. He argues that the affidavit prepared by Sheriff Meacham in support of the arrest warrant contained deliberately false statements and omissions, thereby misleading the judge into issuing the arrest warrant. "It is a violation of the Fourth Amendment for an arrest warrant affiant to 'knowingly, or with reckless disregard for the truth,' include false statements in the affidavit." Id. (quoting Franks v. Delaware, 438 U.S. 154, 155-56 (1978)). Similarly, it is a Fourth Amendment violation to "knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause." Id. (citing Stewart v. Donges, 915 F.2d 572, 581-83 (10th Cir. 1990)). If an arrest warrant affidavit contains false statements, "the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit." Id. Where information has been omitted from an affidavit, we determine the existence of probable cause "'by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have

given rise to probable cause for the warrant.'" Id. (quoting Stewart, 915 F.2d at 582 n.13).

Applying those principles to this case, we agree with the district court's implicit conclusion that the inaccurate statements in the arrest warrant affidavit, as well as the information omitted, would not have altered the probable cause determination.[6] The inaccuracies Mr. Taylor points out are the following: the affidavit stated that Ms. Stanger described the perpetrator's vehicle as a "white or light col[ored] older model Chevy." Aff. of Probable Cause at ¶ 8, Appellant's App. at 257. Ms. Stanger, in her statement given immediately after the incident, stated that the car was light-colored, "maybe a cream or light gold or something" and that she thought it was a Ford. Statement of Ranelle Stanger, Appellant's App. at 143. The affidavit states that "Ranelle [Stanger] stated that the tall assailant called the trigger man 'Tex'" and that Ms. Dixon, in her 1974 interview, stated that a friend of Mr. Taylor's called him "Tex." In fact, as Mr. Taylor points out, Ms. Stanger referred to one of her assailants in her statement as "Tex" simply because he had a Texas accent, not because the other assailant called him that name. Mr. Taylor also asserts that "Sheriff Meacham in weaving together the story for the probable cause affidavit to support an arrest warrant, relied heavily on Taylor's stepdaughter," and

---

[6]We describe the district court's findings as "implicit" because the district court granted summary judgment with little explanation, see supra n.1, stating that it granted the motions for the reasons set forth in defendants' memoranda, which is not a part of the record on appeal.

selectively included only the inculpatory parts of her statement, while omitting the exculpatory parts. The parts he believes are exculpatory are, apparently, some statements to the effect that Mr. Taylor may have been involved in a drug deal with Mr. Nickells and perhaps Ms. Stanger. He also alleges that Sheriff Meacham ignored other witnesses who provided statements he interprets as exculpatory.

Against these inaccuracies are a wealth of uncontested facts which demonstrate a substantial probability that Mr. Taylor committed the Nickells murder and rape of Ms. Stanger. Specifically, the affidavit, in its concluding paragraph, summarized a number of similarities between Susan Dixon's statement and Ranelle Stanger's:

> [B]oth stated that Mr. Taylor used to brag about raping a thirteen year old girl; the trigger man stated that he owned a horse named "Trigger", this information was confirmed by Susan and Susan's sister in a conversation with Susan. Ranelle stated that the tall assailant called the trigger man "Tex." In the 1974 interview of Susan, she was asked if anyone called Taylor "Tex," she stated yes, that David Reynolds does. Evidence at the scene of the murder indicates that a .22 caliber pistol was used to murder Nickells. Ranelle stated that the trigger man used a pearl handled revolver to commit the crime. In 1974, Susan stated that Mr. Taylor carried a .22 caliber revolver and in 1992 she stated that the revolver had a pearl handle. In the 1972 interview with Ranelle she stated that the suspect drove a white or light colored Chevy or Ford with blue interior with decals in the rear window including a decal of the American Flag in the rear window. The description of the vehicle and color of interior was also confirmed in conversations with Adrian Hansen and Gene Saxton. Also, Ranelle indicated that the trigger man wore cowboy boots and western style clothing and had an intimidating personality and that he insisted on burning the Nickells vehicle after killing him. Susan indicated that Taylor wore cowboy boots and western wear in 1972, was a cocky braggart and would repeatedly threaten to kill certain people, including her, and burn them. Finally, Mr. Taylor came home the morning of the murder smelling like smoke and

- 14 -

admitted to killing Nickells[7] before any report had been broadcast of the incident. Both Ranelle Stanger and Susan Dixon deny ever having met or discussing this case.

Affidavit of Probable Cause at ¶ 22, Appellant's App. at 274-75. Setting aside the false statements, about the name "Tex" and the make, and perhaps the color, of the car, and even including the omissions, which are by no means exculpatory, the affidavit contains ample facts supporting a finding of probable cause.

Moreover, Mr. Taylor has presented us with *no* evidence which even suggests that Sheriff Meacham included the false statements, or omitted any facts, knowingly or with reckless disregard for the truth, rather than out of negligence or inadvertence. We therefore conclude that Sheriff Meacham did not violate the Fourth Amendment when he presented the arrest warrant affidavit to a judge, resulting in the issuance of an arrest warrant for Mr. Taylor.

As we have indicated, Mr. Taylor remained incarcerated for seven weeks after his arrest, during which time a preliminary hearing was conducted, in which numerous witnesses testified, including Ms. Dixon and Ms. Stanger, and following which another judge determined that there was probable cause to bind Mr. Taylor over for trial on the first degree murder charge. Having concluded that no Fourth Amendment violation

---

[7]In Ms. Dixon's statement, she did not state that Mr. Taylor admitted killing Mr. Nickells by name. She stated that he told her he had killed a man in Vernal and burned his body in a car.

occurred in connection with his arrest, we could proceed to determine whether Mr.

Taylor's Fourth Amendment rights were violated during this seven-week period.[8]

We need not make that determination, however, because Mr. Taylor's complaint

alleged no impropriety by Sheriff Meacham following his investigation and his

preparation of the arrest warrant affidavit. He does not seriously allege that Sheriff

Meacham made false or misleading statements following his arrest, nor that he somehow

caused false or perjured testimony to be presented at the preliminary hearing.[9] As the

Seventh Circuit has recently observed in a similar case, "[i]t is conceivable that a

wrongful arrest could be the first step towards a malicious prosecution. However, the

---

[8]As Justice Ginsburg observed in her concurring opinion in Albright, pursuing a malicious prosecution claim against a police officer is "anomalous." Albright, 114 S. Ct. at 816 n.5 (Ginsburg, J., concurring). As she explained further:

> The principal player in carrying out a prosecution -- in "the formal commencement of a criminal proceeding,". . . -- is not police officer but prosecutor. Prosecutors, however, have absolute immunity for their conduct. . . .

> By focusing on the police officer's role in initiating and pursuing a criminal prosecution, rather than his role in effectuating and maintaining a seizure, Albright's theory raises serious questions about whether the police officer would be entitled to share the prosecutor's absolute immunity.

Id. (quoting Albright, id. at 824 (Stevens, J., dissenting).

[9]In his amended complaint, Mr. Taylor alleged that Sheriff Meacham made "willful misstatements of fact and lies to individuals who were interviewed, to prosecutors, and to courts." Am. Compl. ¶ 14, Appellant's App. at 3. However, he never develops this argument beyond the context of the arrest warrant, which we have discussed.

chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor." Reed v. City of Chicago, 77 F.3d 1049 (7th Cir. 1996). Here, too, there was a preliminary hearing, which, under Utah law is an adversarial proceeding, State v. Pledger, 896 P.2d 1226, 1229 (Utah 1995), in which a judge independently listened to testimony, evaluated the credibility of those testifying, reviewed evidence, and concluded that the evidence was sufficient to bind Mr. Taylor over for trial. Thus, to the extent Sheriff Meacham set in motion a malicious prosecution, which we do not suggest that he did, the preliminary hearing broke the "chain of causation."[10] We therefore conclude that Sheriff Meacham did not violate Mr. Taylor's constitutional rights in connection with his arrest and incarceration.

Having concluded that no constitutional right was violated, under Siegert, 500 U.S. at 232, we proceed no further on the qualified immunity issue. We accordingly affirm the district court's grant of summary judgment to Sheriff Meacham on the § 1983 action against him in his individual capacity.

Mr. Taylor sued Sheriff Meacham in his individual and official capacities. We have already discussed the individual capacity suit, and concluded that Sheriff Meacham

---

[10]Sheriff Meacham does not argue that the preliminary hearing's probable cause determination should collaterally estop Mr. Taylor from relitigating the existence of probable cause in this § 1983 action. We note that some other courts have so held. See, e.g., Haupt v. Dillard, 17 F.3d 285, 289-90 (9th Cir. 1994); Coogan, 820 F.2d at 175; but see, Schertz v. Waupaca County, 875 F.2d 578, 581 (7th Cir. 1989).

- 17 -

committed no constitutional violation.  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  Kentucky v. Graham, 473 U.S. 159, 166 (1985);  Moore v. City of Wynnewood, 57 F.3d 924, 929 n.4 (10th Cir. 1995).  Thus, Mr. Taylor's official-capacity suit against Sheriff Meacham is simply a suit against Uintah County.  We have held that, once we conclude that the employee -- Sheriff Meacham -- committed no constitutional violation, the claim against the supervisory authority -- Uintah County -- is properly dismissed.  Webber v. Mefford, 43 F.3d 1340, 1344-45 (10th Cir. 1994) ("A claim of inadequate training, supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised.").  We therefore also affirm the district court's grant of summary judgment to Sheriff Meacham and Uintah County in the official-capacity suit.[11]

For the foregoing reasons, the decision of the district court is AFFIRMED.

---

[11]The district court's order granting summary judgment to defendants did not specifically address Mr. Taylor's state law claims.  Once a federal court dismisses claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over related state law claims. 28 U.S.C. § 1367(c)(3); see Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1492 (10th Cir. 1995), cert. denied, 116 S. Ct. 1045 (1996).