FILED
United States Court of Appeals
Tenth Circuit

April 5, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MITCHELL BEAU SHED,

    Plaintiff - Appellant,

v.

OKLAHOMA DEPARTMENT OF
HUMAN SERVICES; TRACY MURPHY,
in her individual capacity; SOMMER
PURDOM, in her individual capacity;
TOWN OF HASKELL; KERMIT
THOMAS, III, in his individual capacity,

    Defendants - Appellees,

and

SUZY PICKARD, in her individual
capacity; TIMOTHY ALAN PICKARD,
II, in his individual capacity,

    Defendants.
_____

No. 17-7039
(D.C. No. 6:16-CV-00383-RAW)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **McKAY**, and **KELLY**, Circuit Judges.
_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mitchell Beau Shed appeals from the district court's order granting summary judgment in favor of defendants Town of Haskell (the Town) and Kermit Thomas, III, a police officer, on Shed's claim for malicious prosecution under 42 U.S.C. § 1983 and violation of Oklahoma's Governmental Tort Claims Act (GTCA). Shed also appeals the court's order that denied his motion to file a second amended complaint against defendants Tracy Murphy and Sommer Purdom, employees of the Oklahoma Department of Human Services (DHS). We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

## BACKGROUND

In spring 2012, Suzy Pickard contacted DHS to report Shed for sexually abusing her five-year-old granddaughter, K.P. The next day, Murphy contacted Officer Thomas to tell him about the allegations and asked him to attend a forensic interview of K.P., the daughter of Jessica Shed (Shed's current wife) and her ex-husband, Tim Pickard (Suzy Pickard's son). Officer Thomas was present for, but did not participate in, the interview; instead, he observed from the other side of a two-way mirror.

During the interview, which was conducted by Purdom, K.P. provided details concerning the alleged sexual assault. She described where Shed touched her, and stated that he put his hand under her nightgown and was digging in her. Using dolls, K.P. reenacted the incident by putting the male doll's hand under the dress of the female doll and moving the hand up and down. K.P. also said that Shed touched her

2

younger brother (Shed's son). Additionally, the following exchange took place between Purdom and K.P.:

> MS. PURDOM: Have you seen [Shed] touch anyone else that you know?
>
> KP: No.
>
> MS. PURDOM: Okay. Did [Shed] touch you anywhere else?
>
> KP: [Shed] hasn't touched nobody.
>
> MS. PURDOM: [Shed] didn't touch anybody?
>
> KP: No.

Aplt. App., Vol. II at 541-42.

Officer Thomas also observed the interview of K.P.'s mother and Shed's wife, who said that K.P. never told her about any improper touching. And during an interview a few days later at police headquarters, Shed, accompanied by his lawyer, denied touching K.P. except to wash her hair during baths.

Eventually, Officer Thomas prepared an affidavit of probable cause. Based on the information in the affidavit, the court issued a warrant for Shed's arrest and he was taken into custody. Following a preliminary hearing, Shed was bound over for trial. After a jury found him not guilty, Shed filed suit for malicious prosecution under § 1983 and the GTCA.

Shortly after suit was filed, Murphy and Purdom filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In his response in opposition, Shed requested that the district court either deny the motion or allow him to file an amended complaint. The court granted Shed's request to amend.

3

Not long after Shed filed his amended complaint, the district court entered the first scheduling order.[1]  Notably, the deadline for filing amended pleadings was listed as not applicable.  A few days later, Murphy and Purdom filed their second motion to dismiss under Rule 12(b)(6).  While their motion to dismiss was pending, the parties filed a joint motion to amend the scheduling order in which they requested a 60-day extension to complete discovery and file dispositive motions.  The amended scheduling order entered by the court extended the deadlines requested by the parties.  Once again, the deadline for amending pleadings was noted as not applicable.  A few weeks later, the district court granted Murphy and Purdom's second motion to dismiss and terminated them from the suit.[2]

Just days before the deadline for filing dispositive motions, and a month after the district court granted Murphy and Purdom's second motion to dismiss, Shed filed a motion to file a second amended complaint to "cure[] the pleading deficiency this Court identified [in its order granting Murphy and Purdom's second motion to dismiss] relative to the [malicious prosecution] claim asserted against Murphy [and] Purdom."[3]  Aplt. App., Vol. I at 69.

---

[1] Fed. R. Civ. P. 16(b)(1), (3) provides that the district court must issue a scheduling order that includes, among other things, the time to amend the pleadings.

[2] After Murphy and Purdom were terminated from the suit, the district court granted the parties' motion to extend the deadline for filing dispositive motions.

[3] Shed titled the motion "Plaintiff's *Opposed* Motion to File a Second Amended Complaint."  Aplt. App., Vol. 1 at 69 (emphasis added).  However, Shed's motion did not say which parties were contacted and their respective positions.

(continued)

The district court denied Shed's motion on the grounds of (1) undue delay, (2) prejudice, (3) the failure to cure the deficiencies in the amended complaint, and (4) futility. Not long thereafter, the court granted the Town's and Officer Thomas' motion for summary judgment. This appeal followed.

## ANALYSIS

**The § 1983 Malicious Prosecution Claim**

"We review the district court's summary judgment rulings de novo, using the same standard as the district court. . . ." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1252 (10th Cir. 2007). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"In this circuit, when addressing § 1983 malicious prosecution claims, we use the common law elements of malicious prosecution as the starting point of our analysis; however, the ultimate question is whether plaintiff has proven the deprivation of a constitutional right." *Novitsky*, 491 F.3d at 1257 (internal quotation marks omitted). The elements of a § 1983 malicious prosecution claim are: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Id*. at 1258. The

Regardless, neither Murphy nor Purdom filed a response to the motion, presumably because they had been terminated from the suit.

5

constitutional "element" of Shed's § 1983 malicious prosecution claim implicates the Fourth Amendment, which requires that "an arrest warrant must be supported by probable cause," and "it is a Fourth Amendment violation to knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause." *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (internal quotation marks omitted).

The thrust of Shed's argument is that the exchange between K.P. and Purdom undermined K.P.'s claim that Shed was the perpetrator of the sexual assault, and had that information been included in Officer Thomas' affidavit, it would have vitiated probable cause.[4] Shed further argues that this omission was exacerbated by other information that Officer Thomas failed to mention in the affidavit, including: (1) he did not investigate whether Shed sexually abused his son; (2) a sexual assault nurse examiner did not find any physical evidence of an assault on K.P.; (3) he lacked the training to properly investigate child sexual abuse cases; and (4) there was long-standing acrimony between the Shed and Pickard families. We will not consider these arguments because he did not raise them in the district court.[5] *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) ("[I]f the theory . . . wasn't

_____

[4] We do not address whether Officer Thomas acted with malice, i.e., that he knowingly or recklessly omitted the exchange between K.P. and Purdom, because even if the information had been included in the affidavit, it would not have vitiated probable cause.

[5] We also note that Shed's appellate briefs consist largely of unsubstantiated facts regarding these four issues without any "citation to the . . . parts of the record on which [he] relies," as required by Fed. R. App. P. 28(a)(8)(A).

6

raised before the district court, we usually hold it forfeited.").  Nonetheless, "we will entertain forfeited theories on appeal, but we will reverse . . . on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result." *Id*.  But Shed has not argued for plain-error review, and his failure to do so "marks the end of the road for an argument for reversal not first presented to the district court." *Id*. at 1131.

Returning to the elements of Shed's § 1983 malicious prosecution claim, probable cause does not require proof beyond a reasonable doubt or even a preponderance of the evidence.  "Instead, the relevant question is whether a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion." *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (citation and internal quotation marks omitted); *see also Taylor*, 82 F.3d at 1562 ("Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime.") (internal quotation marks omitted)).

In *Easton v. City of Boulder*, 776 F.2d 1441, 1450 (10th Cir. 1985), we examined whether discrepancies in the statements of two young boys regarding an alleged sexual assault was enough to vitiate probable cause, and concluded that "[t]he existence of inconsistencies in their statements" did not vitiate probable cause because they did not "undermine the solid core of the children's statements regarding the . . . assault."  After all, "[t]he standard of probable cause does not require indubitable or necessarily convincing evidence, but only so much reasonably

7

trustworthy information as to warrant a prudent man in believing that the arrestee has committed . . . an offense." *Id*. (brackets and internal quotation marks omitted).

Applying these principles to Shed's case, we agree with the district court that "[d]iscrepancies in [K.P.'s] statements did nothing to undermine the solid core of [her] statements regarding what was actually done to her for [the] purpose of determining probable cause for issuance of [an arrest] warrant." Aplt. App., Vol. II at 551-52.

**The Alleged Violation of the GTCA**

Shed argues that he can state a claim against Officer Thomas and the Town for the negligent performance of their law enforcement duties under the GTCA, even if there was probable cause for issuance of the arrest warrant under the Fourth Amendment, citing *State ex rel. Oklahoma Department of Public Safety v. Gurich*, 238 P.3d 1, 4 (Okla. 2010), which holds that the "[n]egligent performance of a law enforcement function is not shielded from immunity under the GTCA." According to Shed, "[e]ven where arguable probable cause may exist under Fourth Amendment standards, it could still result from negligent conduct. Here, a jury could determine that [Officer] Thomas failed to exercise reasonable care in conducting his investigation." Aplt. Opening Br. at 24.

Officer Thomas and the Town counter that this is a new claim, raised for the first time on appeal. More specifically, they argue that the only claims in Shed's amended complaint pertain to malicious prosecution.

8

We need not resolve these disputes, because the problem for Shed is that he has failed to cite any authority that under Oklahoma law, a police officer is negligent if he fails to conduct a complete investigation prior to seeking an arrest warrant. *See United States v. Banks*, 451 F.3d 721, 728 (10th Cir. 2006) (holding this court does not address arguments that are not supported by legal authority).

**The Motion to File a Second Amended Complaint**

"In general, leave to amend a complaint should be freely granted 'when justice so requires.'" *Jones v. Norton*, 809 F.3d 564, 579 (10th Cir. 2015) (quoting Fed. R. Civ. P. 15(a)(2)). But there are a number of well-established reasons to deny leave to amend, including: (1) undue delay; (2) undue prejudice to the opposing party; (3) failure to cure deficiencies in previous amendments; and (4) futility. *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009).

"Where the reason for denial of leave to amend is futility, we review de novo the legal basis for the finding of futility," otherwise we review the denial "for abuse of discretion." *Jones*, 809 F.3d at 579. "A district court abuses its discretion if its decision is arbitrary, capricious, whimsical, or manifestly unreasonable." *Bylin*, 568 F.3d at 1229 (internal quotation marks omitted).

In its order granting Murphy and Purdom's motion to dismiss, the district court found that the amended complaint was subject to dismissal because, among other things, the allegations did not establish several elements necessary for a § 1983 malicious prosecution case, including the lack of causation.

9

In his proposed second amended complaint, Shed purported to cure the "causation" deficiency by alleging that Murphy and Purdom failed to disclose the exchange between K.P. and Purdom concerning who Shed touched in their child-welfare reports to the District Attorney's Office. But the child-welfare reports did not cause Shed's arrest. We therefore agree with the district court that "the proposed amendment would be futile, in that it still does not state a plausible allegation of causation." Aplt App., Vol. II at 490.

We also agree that the district court did not abuse its discretion in otherwise denying the proposed amendment. First, we agree there was undue delay in light of the fact that the parties agreed on several occasions in the scheduling orders that there was no need to establish a deadline to amend the pleadings because the time to do so had passed. Second, Murphy and Purdom had been terminated from the suit, and to haul them back into court when several important deadlines had passed, would have been unduly prejudicial. Last, the court had already allowed Shed the opportunity to amend his complaint in response to the first motion to dismiss. We agree with the court that the amended complaint "was the occasion to fortify the allegations against [a second] motion [to dismiss]." *Id*. at 489. As the court noted, "[t]he purpose of motion practice under Rule 12(b)(6) . . . is not for the court to 'identify' pleading deficiencies as to each defendant, with such deficiencies to be

10

'corrected' by serial amendments." *Id*. at 489-90. None of these determinations were arbitrary, capricious, whimsical, or manifestly unreasonable.

The judgment of the district court is affirmed.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge