**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 18, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RODOLFO RIVERA, JR.,

     Plaintiff - Appellant,

v.

OFFICER JOHN GRANILLO,
CSPD 3876,

     Defendant - Appellee.

No. 20-1133
(D.C. No. 1:17-CV-01667-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **MATHESON**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

    Proceeding under 42 U.S.C. § 1983, Rodolfo Rivera, Jr., brought claims

against Colorado Springs police officer John Granillo for malicious prosecution and

excessive force. The district court resolved both claims in Granillo's favor.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

   * After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I.    BACKGROUND & PROCEDURAL HISTORY

Granillo arrested Rivera on suspicion of assault and harassment.  After booking Rivera in jail, Granillo filled out a probable cause affidavit in support of the arrest, which a local judge reviewed and approved.  Rivera spent five days in pretrial detention.  He eventually went to trial and the jury acquitted.

Following acquittal, Rivera filed this civil suit, alleging that Granillo lacked probable cause to arrest him (malicious prosecution) and failed to heed his complaints that the handcuffs were painfully tight (excessive force).  The district court found that probable cause to arrest was evident as a matter of law on the documents Rivera attached to the complaint, and so dismissed the malicious prosecution claim under Fed. R. Civ. P. 12(b)(6).[1]  The district court allowed the excessive force claim to go to discovery.

Following discovery, Granillo moved for summary judgment, asserting both non-liability and qualified immunity.  The district court found that the undisputed facts showed Granillo did not wait too long after Rivera's complaints of pain before removing the handcuffs.  The court accordingly granted Granillo's motion and entered final judgment against Rivera.

We provide additional details as they become relevant to the various issues discussed below.

---

[1] The district court also dismissed a claim for gender discrimination.  Rivera does not challenge this dismissal on appeal.

## II. ANALYSIS

Rivera challenges the district court's dismissal of his malicious prosecution claim and its grant of summary judgment on his excessive force claim. We review both challenges de novo. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 766 (10th Cir. 2013) (summary judgment); *Janke v. Price*, 43 F.3d 1390, 1391 (10th Cir. 1994) (dismissal for failure to state a claim).

### A. Malicious Prosecution

The government violates a person's Fourth Amendment right to be free from unreasonable seizures when "legal process result[s] in pretrial detention unsupported by probable cause." *Manuel v. City of Joliet*, 137 S. Ct. 911, 919 (2017). Our circuit refers to this claim as "malicious prosecution," and holds that the plaintiff must prove, among other things, that "no probable cause supported the original arrest, continued confinement, or prosecution." *Sanchez v. Hartley*, 810 F.3d 750, 754 n.1 (10th Cir. 2016) (internal quotation marks omitted).

The legal process at issue here was the local judge's approval of Granillo's probable cause affidavit, thus requiring Rivera to remain in detention until he could post bond. Although that judge found probable cause, Rivera can nonetheless prove the no-probable-cause element of his claim by demonstrating that Granillo misled the judge into finding probable cause through deliberately false statements or material omissions. *See Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996). When faced with such a claim, the reviewing court's task is to reconstruct the affidavit as it

3

should have been (omitting falsities and inserting material omissions) and then decide whether the affidavit still shows probable cause.  *Id.*

In this light, we first summarize the affidavit.  We then turn to Rivera's claims that Granillo omitted or misrepresented material facts.

### 1. The Probable Cause Affidavit

The affidavit tells substantially the following story.  On the night of October 30, 2015, Granillo was dispatched to a particular residence based on "a reported domestic disturbance."  R. vol. 1 at 26.  There he met a woman named Janet Miller.  Miller said that she and Rivera—whom she described as her boyfriend—got into a prolonged argument the night before (*i.e.*, October 29).  During the argument, Rivera "kept repeating the statement, 'You're not answering the question.'"  *Id.*  Eventually Rivera "punched [Miller] with a closed fist using his right hand striking her in the left upper rib area below her breasts."  *Id.*  "[T]his caused her pain as she shouted out in pain[,] 'Ow.'"  *Id.*  Sometime after this, they went to sleep.  "Miller stated she did not call police during this incident and did not know why . . . ."  *Id.* at 27.

According to Miller, the fight briefly resumed the next morning and Rivera stated, "I didn't hit you, I just touched you, do you want me to really hit you so you can compare them[?]"  *Id.* at 26 (internal quotation marks omitted).  Then, when Rivera returned home that evening, "she asked him to leave."  *Id.* at 27.  Rivera "immediately went to his bedroom stating he wanted to be left alone to go to sleep."  *Id.*  Miller again asked Rivera to leave, and Rivera again stated he wanted to be left

4

alone, after which he closed the door to the bedroom. That's when Miller called 911, leading to Granillo's dispatch.

Granillo "did not notice any marks on Ms. Miller's body in the area she described she was hit, but photographed it." *Id.* He then spoke with Miller's adult son, who said he was in his own bedroom the previous night, across the hall from where the fight took place. "[H]e could hear Mr. Rivera repeating the same question over and over as if trying to get an answer that he wanted." *Id.* He also "heard his mother scream out 'Ow' as if some type of physical altercation had occurred." *Id.*

Finally, Granillo spoke with Rivera, whose story about what happened since he returned home that night was essentially the same as Miller's (*i.e.*, she asked him to leave but he just wanted to go to bed). As for the previous night's fight, Rivera "stated there was no incident and there was nothing to be talked about." *Id.*

Ultimately, Granillo decided he had probable cause to arrest for third-degree assault and harassment.[2]

### 2.    Alleged Material Omissions

Rivera alleges that Granillo was aware of additional facts that he should have included in the warrant affidavit, specifically:

- At around the same time Miller called 911, Rivera also called 911.

---

[2] Colorado defines third-degree assault as "knowingly or recklessly caus[ing] bodily injury to another person," Colo. Rev. Stat. § 18-3-204(1)(a), where bodily injury means, among other things, "physical pain," *id.* § 18-1-901(3)(c). Colorado defines harassment, in this context, as "[s]trik[ing], shov[ing], kick[ing], or otherwise touch[ing] a person or subject[ing] him to physical contact," if done "with intent to harass, annoy, or alarm another person." *Id.* § 18-9-111(1)(a).

Although he "did not want the police to come," he nonetheless reported that Miller was "barging [into his] room and saying she wanted him out." R. vol. 1 at 35.

- Rivera had been "generally cooperative" on the night of October 30, according to Granillo's testimony during Rivera's criminal trial. *Id.* at 68.

These omissions relate entirely to the night of October 30. They are irrelevant to whether Granillo had probable cause to arrest Rivera for actions allegedly taken the previous night (October 29). Thus, they do not affect the probable cause analysis.[3]

Rivera further argues that Granillo failed to emphasize Miller's primary motive: "she called the police so she could have [him] removed from the residence." *Id.* at 36. This is important, says Rivera, because Miller supposedly said nothing about the previous night's assault until after Granillo told Miller that Rivera "had legal standing to be at the residence" (*i.e.*, the police could not remove him as a trespasser). Aplt. Opening Br. at 5. Thus, Miller had a reason to fabricate the assault, as an alternate means of convincing the police to remove Rivera, yet Granillo never pointed this out to the reviewing judge.

---

[3] Rivera also claims that the warrant affidavit falsely "states that the incident took place on 30 Oct 15." Aplt. Opening Br. at 23. But the warrant affidavit consistently distinguishes between the alleged October 29 fight culminating in a punch to Miller's ribs and the October 30 verbal disagreement that prompted Miller to call 911. *See* R. vol. 1 at 26–27.

6

This argument fails for lack of evidence. To be sure, Granillo's police report, but not his affidavit, recounts that he "advised [Miller] that [he] was unable to have Mr. Rivera removed from the home because he had been at the residence for approximately 7–9 years," and he "explained to [her] about the protection order and eviction processes." R. vol. 1 at 38. However, the police report places this event as the last thing Granillo says to Miller—well after she describes the assault, after Granillo speaks with Miller's son, and after Granillo contacts Rivera and places him in the police cruiser. *See id.* at 35–38. The only evidence Rivera cites to challenge this timeline is a contentious deposition exchange in which Rivera elicits Granillo's agreement that, according to the police report, Miller first described the previous night's event as a "verbal altercation," with no mention of physical contact. *See* R. vol. 4 at 58–62 (quoting R. vol. 1 at 35). Whatever the value of this concession, the next paragraph of Granillo's police report contains Miller's account of the punch to her ribs. *See* R. vol. 1 at 36. And, again, Granillo says nothing about Rivera's right to remain in the residence until well after this. *Id.* at 38. So Rivera has no evidence that the timeline is any different than what Granillo's police report reflects.

Even if Rivera had evidence of his alternate timeline, Granillo would still have possessed probable cause. Granillo spoke with Miller's son who claimed to have overheard the argument. He generally corroborated her story, including hearing an exclamation of pain consistent with being struck. Rivera nowhere argues that Granillo had reason to doubt the son's account.

7

"[P]robable cause is a matter of probabilities and common sense conclusions, not certainties." *United States v. Martin*, 613 F.3d 1295, 1302 (10th Cir. 2010) (brackets in original; internal quotation marks omitted). And Granillo needed only "arguable probable cause," given his assertion of qualified immunity. *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (internal quotation marks omitted). He had at least that much, even if Miller never told her story of the assault until after he told her he could not remove Rivera for trespassing.

In sum, Rivera fails to point us to any falsity within or material omission from the warrant affidavit that would have vitiated probable cause. The district court correctly dismissed Rivera's malicious prosecution claim because it was clear on the face of the pleadings that probable cause existed, thus defeating a necessary element of the claim.

## B. Excessive Force

"In some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight." *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (en banc).

In this regard, the timeline is important. Granillo arrived at the residence shared by Rivera and Miller, heard Miller's accusations and Rivera's response, and Granillo's sergeant directed him to cuff Rivera and place him in the back of the police cruiser. Granillo carried out this directive at 11:43 PM. He checked the

8

handcuffs for tightness by ensuring there was a finger's width of space between the handcuffs and Rivera's wrists. He then went back inside the residence to continue his interviews, while Rivera sat by himself in the police cruiser.[4] This is when Rivera began to feel pain from the handcuffs.

At 12:15 AM, Granillo returned to the police cruiser and announced that Rivera was under arrest. Around this time, Rivera complained about the handcuff pain, but Granillo chose to drive Rivera to the nearest substation before removing the cuffs. The parties dispute the amount of time it took to reach the substation—we address below whether Rivera raises a genuine dispute. Regardless, not long after arriving at the substation, Granillo removed the handcuffs.[5]

The district court focused on the length of time between Rivera's first complaint to Granillo and the moment Granillo removed the handcuffs. Rivera argues, however, that the court must look at the entire time he was in handcuffs, and

---

[4] Granillo says "there was a small amount of water in the deep part of the seat" in which he placed Rivera. R. vol. 1 at 38. Rivera claimed below (and continues to insist on appeal) that this liquid was urine, not water, but he has pointed us to no evidence that the liquid was urine, nor even explained in argument why he believes as much. We therefore disregard the allegation.

[5] In the district court, Rivera claimed that Granillo—just before removing the handcuffs—unnecessarily pulled Rivera's cuffed hands upward, above shoulder level, causing great pain. The district court's summary judgment order does not address this accusation. Although Rivera mentions this incident in his opening brief, *see* Aplt. Opening Br. at 4, 11, he fails to present any argument for reversal based on it. In particular, he fails to demonstrate that the summary judgment record contains enough evidence to establish a genuine dispute of material fact. "Arguments inadequately briefed in the opening brief," like this one, "are waived." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998).

9

particularly account for the fact that Granillo checked the handcuffs for tightness in a manner supposedly contrary to his own expert's recommendations. If Rivera means to say that improper handcuffing technique can substitute for being "made aware . . . that the handcuffs were too tight," *Cortez*, 478 F.3d at 1129, he makes no attempt to satisfy his qualified immunity burden of showing that this was clearly established law at the time Granillo acted, *see Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." (internal quotation marks omitted)). In any event, Granillo's expert did not opine that Granillo used an improper tightness-checking technique. The expert said that he *could not tell* from Granillo's description of the event whether Granillo used proper technique. *See* R. vol. 4 at 212, ¶ 3. Rivera therefore fails to show an entitlement to a trial on this question.

The remaining question is whether Granillo "ignored [Rivera's] timely complaints . . . that the handcuffs were too tight." *Cortez*, 478 F.3d at 1129. The answer turns on four sub-questions.

First, when did Rivera complain to Granillo? The district court found that he "did not complain . . . until [Granillo] got back into [the] patrol car and put the car into gear to go to the . . . substation." R. vol. 4 at 309. In the district court, Rivera suggested that it happened earlier, but Rivera now says he "concurs with" this

finding. Aplt. Reply Br. at 3–4. The district court therefore correctly identified the starting point of the analysis.

Second, with what words, or in what manner, did Rivera complain? In his summary judgment motion, Granillo asserted that Rivera "complained of wrist pain," and "made his complaint in a conversational manner." R. vol. 2 at 5, ¶ 12.[6] Rivera did not contest this assertion. *See* R. vol. 4 at 12, ¶ 12. Thus, the district court properly found that Granillo's story was undisputed on this point.

Third, what did Granillo do after Rivera complained? Rivera says that Granillo "started going fast when I complained to him." R. vol. 2 at 42. Although there does not appear to be any dispute about this, we will assume it is the version of the facts most favorable to Rivera. We further note that Granillo explained his decision to keep going, rather to stop and re-check the cuffs, as a question of safety, given that it was nighttime and he was unassisted. Rivera offered no evidence or argument that these were improper considerations.

Fourth, how long did the trip to the substation take? In the district court, Granillo said twelve minutes. Rivera responded that "the trip took more than 12 minutes," R. vol. 4 at 11, but went on to argue and cite evidence concerning the *total*

---

[6] Rivera asserts that Granillo's summary judgment affidavit was a "sham affidavit" as compared to his testimony at Rivera's criminal trial, *see* Aplt. Opening Br. at 25–26, but Rivera never argued as much to the district court. "A federal appellate court, as a general rule, will not reverse a judgment on the basis of issues not presented below." *Petrini v. Howard*, 918 F.2d 1482, 1483 n.4 (10th Cir. 1990) (per curiam). Rivera gives us no reason to depart from this general rule, so we do not address his sham affidavit argument.

amount of time he spent in handcuffs. Rivera never supported his assertion that the drive to the substation took longer than twelve minutes. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). The district court therefore did not err in finding this portion of Granillo's account undisputed.

On the undisputed facts, or those taken in the light most favorable to Rivera, we agree with the district court that Granillo did not "ignore[] a . . . complaint[] . . . that the handcuffs were too tight." *Cortez*, 478 F.3d at 1129. Under the circumstances, moreover, it was reasonable as a matter of law for Granillo to wait the relatively short amount of time it would take to get to the substation—an amount of time compressed by Granillo's choice to drive faster—before removing the cuffs. Summary judgment for Granillo was therefore appropriate.[7]

### C. Attorneys' Fees

Rivera argues that the district court erroneously awarded Granillo his attorneys' fees. We find no such award in the record. Rather, the district court

---

[7] Although Rivera focuses on unduly tight handcuffing, he occasionally inserts language seemingly asserting that handcuffing alone amounted to excessive force under the circumstances. *See* Aplt. Opening Br. at 17, 19–20; Aplt. Reply Br. at 10–11. If Rivera indeed means to argue as much, he fails in his qualified immunity burden to identify case law clearly establishing that handcuffing can be constitutionally excessive even when not painful. *Cf. Mglej v. Gardner*, 974 F.3d 1151, 1166 (10th Cir. 2020) ("Mglej has failed to identify any relevant case law clearly establishing that Deputy Gardner violated the Fourth Amendment just by handcuffing [him]. . . . In fact, relevant case law generally suggests the contrary.").

awarded Granillo his costs.  But Rivera's attorneys' fees argument is not a misnamed

attack on costs.  *See* Aplt. Opening Br. at 28 (invoking the "American Rule" and

"Lodestar approach").  Because the district court made no fee award, this argument is

moot.

## III.    CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Joel M. Carson III
Circuit Judge
